JOHN B. DEMERS *vs.* JAMES MARSHALL.

Bristol.    October 26, 1898. — March 1, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Personal Injuries — Master and Servant — Dangerous Machine — Action.*

An action cannot be maintained, either at common law or under the employers' liability act, St. 1887, c. 270, for personal injuries sustained by a boy eighteen years old, who, in the performance of his duties as an apprentice in a machine shop, while oiling the bearing of a revolving shaft, is caught by a projecting set screw which fastens a collar to the shaft near the bearing.

TORT, for personal injuries sustained by the plaintiff through the alleged negligence of the defendant. The declaration contained counts at common law and under the employers' liability act, St. 1887, c. 270. The case was tried in the Superior Court, before *Hammond*, J., and, he having ceased to be a justice of that court, a bill of exceptions, at the request of the parties, was allowed by *Dewey*, J., in substance as follows.

The accident happened in the machine shop connected with the hat manufactory of the defendant.

The plaintiff was injured while oiling a countershaft, in which was a set screw that projected from the shaft, according to the evidence, between one and one eighth inches and one and seven eighths inches. There was no contention but that this set screw was a device in common use, and suitable for the purpose for

which it was intended. The countershaft was twelve feet long, eight feet and nine inches from the floor, and suspended from the ceiling by two hangers, one near each end. The ceiling was about ten feet and three inches from the floor. In each hanger was a small hole by means of which to oil the bearing. The accident happened near the hanger at the south end of the shaft. Just north of this hanger and close to it was a pulley twenty-six inches in diameter, and just south of the hanger was a collar about two inches wide, seven eighths inches thick, and three and five eighths inches in diameter. This collar kept the shaft in place, and the purpose of the set screw was to fasten the collar to the shaft. The set screw was half an inch in diameter, and it had a square head also half an inch in diameter. The end of the shaft projected southerly beyond the collar about fourteen inches. The oil hole in the bearing was on the east side of the shaft, and close to the set screw. Just east of the centre of the bearing, and about fifteen inches distant therefrom, was a post which supported the beam and the ceiling from which the hanger was suspended. The shaft was about one and seven eighths inches in diameter, and revolved at a speed between ninety and one hundred revolutions a minute. The room was on the ground floor of the building, and was lighted from windows on the south, east, and west sides.

The plaintiff testified that he reached the age of nineteen years at Christmas, 1897; that the accident occurred on December 14, 1896, at which time he had been working in the machine shop as an apprentice very nearly three weeks; that the foreman of the shop, one Sackett, told one McClellan to show the plaintiff what was to be done; that McClellan showed him about the oiling, and went and got a step ladder, and oiled the shaft, placing the ladder on the east side of the shaft, and showing the plaintiff where the oil box was, and the plaintiff oiled the rest; that the plaintiff had not oiled this shaft at all before the accident; that the oiling was done on Mondays only; that in showing him how to oil McClellan got up on the step ladder, and put the oil in the oil box, and said nothing to the plaintiff except to tell him to put the oil in the box; that the next time that he did any oiling was on the Monday two weeks later, being the morning of the accident about half past seven o'clock;

that McClellan came to him and asked him if he had oiled up, to which he replied, " No," and McClellan said, " You had better go and oil up now "; that he then went up stairs and got the ladder, and the first place he began to oil was where the accident happened; that he put the ladder upon the west side of the shaft because there were some castings on the east side; that the pile of castings was about two feet high, and spread out about five feet, and he could not put the ladder on that side; that besides the castings there were some pulleys and old pumps on the east side, the pulleys being about four feet high; that the plaintiff brought some of the castings there himself under Sackett's orders; that the pulleys were rolled in by McClellan, another boy, and the plaintiff; that he could see the shaft from the floor and see it turn; that he looked at it before he went up, but did not see any set screw; that he placed his ladder, looked up, and then went up with the oil can and oiled the shafting; that when he got up there he did not see any set screw; that to oil the shaft he stood on the next to the top step; that he reached over with his left hand to oil, and while he was oiling something grabbed his sleeve, and he tried to pull away, but he could not do so, and it drew him right on to the shaft; that while he was doing that work he was looking where to oil, and did not see anything on the shaft or collar, or any place there that he thought could catch him; that he wore an over-all jacket with loose sleeves, as loose as an ordinary jacket sleeve; that nobody ever told him about the set screw being there, or gave him any warning about it at all; that he saw no reason why he should not oil from that side as well as from the other; that he could not take the castings away without Sackett's order; that Sackett told him to put them there; and that nobody told him of any danger at all about that place.

It was admitted by the defendant that it was the set screw which caught the plaintiff.

On cross-examination, the plaintiff testified that previously to becoming an apprentice in this shop he had been doing nothing for a long time; that before that he had been working at weaving for three or four months; that he was learning at one mill, and afterwards ran four looms at another mill; that these looms were connected with the shafting; that he saw the shafting,

belts, and pulleys; that he understood the machinery was run by belts and pulleys; that he was a little familiar with running machinery; that he could have laid the castings one side; that he did not know that Sackett would have been satisfied to take them away from there; that he knew that the shaft was in motion at the time he placed his ladder there; and that he could see the oil hole from where he was standing.

He also testified as follows: " I looked for the oil hole, that is all I looked for. . . . I was n't looking for the set screw. . . . I was just looking where to oil, that is all."

On re-direct examination, he testified as follows: " *Q.* Did you know that any set screw or set screws were used on the shafting at all? *A.* No, I did n't. — *Q.* As far as you saw from where you were standing, could you see that there was any danger of your getting caught on the shaft? *A.* No, sir."

Alexander McClellan, called as a witness by the plaintiff, testified that Sackett told him to show the plaintiff where to oil the shaft, and do the work of an apprentice, and what those duties were, and the witness did show him; that in showing the plaintiff how to oil the shaft, the witness took the step ladder and put it on the floor and oiled the bearing where the oil goes in, putting his left hand against a staircase; that there were on that day no castings, or anything underneath that interfered with his getting the ladder in position; that he told the plaintiff to oil once a week, Monday being the day to oil; that on the day of the accident he asked him if he had oiled the shafting, and he said he had forgotten it, and would go and do it, and he went and got an oil can, and then he went up to the machine shop upstairs and got a step ladder; that there were at that time some castings underneath the shaft to interfere with the plaintiff's putting the ladder in the same place that the witness did to oil; that these things were arranged on the floor as if carried in and just thrown down, and were all lying intermingled with one another; that if the plaintiff had put the ladder on the castings it would have been dangerous to stand on; that the plaintiff put his ladder on the other side, which brought his left side nearest to the oil hole; and that he did not see him oiling the bearing at all, and " the first thing I knew was he called out."

On cross-examination, he testified that the morning he showed the plaintiff where to oil, the plaintiff was standing on the floor where he could see all the time; that he could see the set screw going round if he looked at it; that he could see it from the floor anywhere around there and underneath it; that he could do the same at the time he was hurt; that one of the largest castings weighed about twenty-five pounds; and that they were thrown down and used in the machine shop as they were wanted.

George Jack, called as a witness by the plaintiff, testified that he was a machinist in the employ of the defendant; that he noticed the castings that were lying on the floor; that the pile was irregular, occupying four or five feet of space, and about a foot high; that in order to use the ladder on that side one would have to remove the castings; that he remembered seeing the set screw often when it was revolving; and that he was familiar with the fact that such things are used on every shaft.

On cross-examination, he testified that he could see the set screw revolving, and could see it from the floor the day of the accident; that there was nothing, so far as he knew, to prevent the plaintiff from pushing the castings one side if he wanted to; that the accident happened about eight o'clock in the morning; and that there was no darkness that would interfere with seeing on the day and at the time of the accident.

The defendant called as a witness Charles E. Sackett, the foreman of the shop, who testified that there was no rule or custom or order that he knew of which prevented the plaintiff from moving the castings if he wanted to put his ladder there; that he said nothing to him about placing his ladder, and he did not know that he put it there; that as the set screw moved around it was coming towards the plaintiff while he was oiling; and that it always turned that way.

At the conclusion of the evidence, the defendant asked the judge to direct a verdict for him, but the judge refused so to do.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. F. Jackson & R. P. Borden,* for the defendant.

*J. W. Cummings,* (*E. Higginson* with him,) for the plaintiff.

BARKER, J. This case offers another instance of injury sustained by the presence of a projecting set screw as a part of machinery with which the plaintiff had to do in his work, and is governed by *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153, and by *Ford* v. *Mount Tom Sulphite Pulp Co., ante,* 544.

*Exceptions sustained.*