JOHN B. DEMERS *vs.* JAMES MARSHALL.

Bristol.    October 22, 1900. — February 27, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

In an action brought by an apprentice against his employer, to recover for injuries from being caught on a set screw on the collar of a revolving shaft, there was evidence that for ten years previous to the accident set screws to a great extent had been going out of use on account of the adoption of safer substitutes, but were still used in factories as a recognized device for holding the collar to the shaft. *Held,* that the defendant was not bound to change the set screw or to point it out to the plaintiff.

An apprentice in a machine shop injured by being caught on a set screw on the collar of a revolving shaft, while attempting to oil the shaft, cannot recover from his employer, the risk being an obvious one which he assumed.

An apprentice in a machine shop who was instructed to oil a revolving shaft using a step ladder placed at a certain spot, and who finding that spot occupied by castings piled upon the floor, which he might have got permission to remove, put the step ladder in another place and by reason of so doing, while reaching over the shaft which he was attempting to oil, was caught by the sleeve on a set screw on the collar of the shaft, and who testified that it was quite dark at the time, was held to be acting without due care.

TORT to recover compensation for injuries received by the plaintiff while employed in a machine shop connected with the hat factory of the defendant.    Writ dated January 15, 1897.

A former verdict for the plaintiff in this case was set aside under a decision of this court reported in 172 Mass. 548.    At the new trial in the Superior Court, before *Braley,* J., the following facts appeared :

The plaintiff, a young man eighteen years old, who had previously worked as a weaver three or four months, entered the employment of the defendant as an apprentice in the machine shop about three weeks before the accident.    He was turned over to one McClellan, an experienced apprentice, to be shown his duties.    Among other things he was directed to oil the shaft-

ing once a week. McClellan took him to a place near the end of a shaft and, while the plaintiff was watching, placed a step ladder under the shaft and poured the oil from an oil can into a small oil hole on the shaft hanger. On the shaft near this oil hole was a collar, held in place by a set screw projecting therefrom between an inch and one eighth and an inch and seven eighths. The shafting revolved at the rate of from ninety to a hundred revolutions a minute. The set screw was plainly visible from the floor " and you could see it going round if you looked at it." It was not in the way of one approaching the oil hole when the step ladder was placed as McClellan placed it when he was showing where and how to oil. Two weeks later, the plaintiff being asked by McClellan if he had oiled up, replied that he had forgotten to but would go and do it. The plaintiff then procured a step ladder and, because there were some castings on the floor at the spot where McClellan had placed the step ladder in showing him how to oil, set his ladder on the opposite side of the shafting, and with his oil can climbed up so as to be close to the shafting at the place where the set screw and oil hole were, with the upper part of his body above the shafting. Reaching over the set screw and the shafting, he undertook to put the oil into the oil hole, and the loose sleeve of his overall jacket catching in the set screw bound him to the shafting and he revolved with it. The castings, thrown in a heap on the floor, were brought there by the plaintiff and others by order of the foreman, one Sackett. As to these castings, the plaintiff testified that he could have laid them one side if he was told to, but that he did not know that Mr. Sackett would have been satisfied to take them away from there. The plaintiff testified that the set screw had never been pointed out to him; that when he set up his ladder he looked up and saw the shafting revolving; that he could see the oil hole; that he did not see the set screw; that he did not look to see what was there; that he looked for the oil hole and that was all he looked for, and that it was quite dark.

It was agreed " that ten years ago such a device, a projecting set screw, with others, was in common use, but since that time this device has been going out of use, and in the last ten years it has not been commonly used in establishments constructed

during that time, although it· is used in some instances in such establishments, and that many establishments existing ten years ago have got rid of this device and substituted another; that the device on account of the great danger attending it has been regarded by mechanics in this period as unsuitable. The projecting set screw, however, does the work intended of holding the collar to the shaft."

John Marshall, called by the plaintiff, testified that he was a brother of the defendant, and that he was interested in and connected with the hat factory; that he thought the hat factory was started about 1892; that the building was formerly the old Wyoming Thread Mill, and the room where the accident happened was the machine shop of the old mill; that he came from Pawtucket, and that the first time he went into the factory was after it was started; that he found the shafting there, but that he did not know whether or not any change had been made in the shafting of the old machine shop, and that he did not know how long the shafting had been there.

At the conclusion of this evidence, the defendant asked the judge to direct a verdict for the defendant. This ruling was given, against the objection of the plaintiff. The jury returned a verdict for the defendant as directed. At the request of the parties the judge reported the case for the consideration of this court, upon the agreement that if the ruling directing the verdict for the defendant was wrong, the question of liability was to be considered settled in favor of the plaintiff, and the case was to be sent to a jury solely for the purpose of assessing damages. If the ruling was right, then judgment was to be entered on the verdict for the defendant.

*J. W. Cummings,* (*E. Higginson & C. R. Cummings* with him,) for the plaintiff.

*J. F. Jackson,* (*R. P. Borden* with him,) for the defendant.

MORTON, J. We do not think that the additional evidence introduced at the last trial requires or would justify a different view from that which was taken when the case was here before. 172 Mass. 548. Notwithstanding it now appears that projecting set screws have been going out of use for the last ten years on account of safer substitutes, and have not been commonly used in establishments constructed during that time, the new evidence

falls far short, as a whole, of showing that they are not still commonly used for holding collars and pulleys on to shafts and are not a well recognized device for that purpose. It is expressly stated, indeed, that they have been used in some new establishments, and though it is said that many establishments existing ten years ago have got rid of them and have adopted other devices, it is plain that many establishments still continue to use them. The defendant was not bound to change the set screw or to point it out to the plaintiff. The uncontradicted testimony was that it could be seen from the floor and the danger from the revolving shaft was apparent. The risk was an obvious one which the plaintiff must be held to have assumed. *Hale* v. *Cheney*, 159 Mass. 268. *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153, cited in *Wilson* v. *Massachusetts Cotton Mills*, 169 Mass. 67, 71, and *Donahue* v. *Washburn & Moen Manuf. Co.* 169 Mass. 574, 575. *Ford* v. *Mt. Tom Sulphite Pulp Co.* 172 Mass. 544. Moreover, instead of putting up his ladder on the side on which he had been instructed to put it up, the plaintiff, without any direction from any one, put it up on the opposite side, and, without any examination, attempted to do the oiling by reaching over the revolving shaft in close proximity to it. This was a dangerous thing to do, especially if, as he testified, "it was quite dark," and showed a want of due care. There was nothing to prevent him from moving the castings or at least from speaking to the foreman about doing so.

The testimony of John Marshall would not have warranted a finding, if that was material, that the mill had been constructed within ten years or that the piece of shafting was new.

*Judgment on the verdict.*