### ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

HENRY GILLETTE *vs.* GENERAL ELECTRIC COMPANY.

Bristol.   October 24, 1904. — November 21, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability.

If a workman, in crossing the end of a pit at the place of his employment instead
of going around it, chooses to step upon a timber plainly inserted as a brace to
hold a piece of machinery in place and not intended as a bridge, he does so at
his own risk, and it does not matter how often the same risk has been taken by
himself and others, including the superintendent in charge of the work.

TORT for personal injuries sustained while in the employ of
the defendant as a laborer helping to install a large electric gen-
erator in the power house of the Old Colony Street Railway
Company in Fall River, through the alleged negligence of a
superintendent of the defendant.   Writ dated September 16,
1902.

At the trial in the Superior Court *De Courcy,* J. at the close
of the evidence ruled that there was no evidence which would
warrant a verdict for the plaintiff, and ordered a verdict for the
defendant.   At the request of the parties, the judge reported
the case for determination by this court, it being agreed that if

the ruling was correct the verdict for the defendant was to stand; otherwise, the plaintiff was to be entitled to damages in a sum agreed upon by the parties.

*F. A. Pease*, for the plaintiff.

*R. P. Borden*, for the defendant.

BARKER, J. The work in hand was the installation by the defendant of an electrical generator in the power house of a railway company. The undertaking was in its nature temporary. The building with its entrances and floors did not belong to the defendant and was to be used by it only while it was installing the machinery in the power house. Before the plaintiff who was a common workman began his employment there a pit had been constructed in and below the floor to receive the generator and the fly wheel of the engine which was to drive it. In one part of the pit the lower half of the field piece of the generator had been placed. This half was a metal structure weighing sixteen tons or more, and portions of it rose three or four feet above the level of the floor. Tackle used to bring into place heavy parts of the machinery to be installed had been hitched to one end of that half of the field piece which had been put in the pit. To prevent the strain of the tackle from moving the field piece in the pit a brace had been placed between it and the opposite side wall of the pit, about two feet from the end of the pit. This brace was a stick of lumber three and one half feet in length six inches wide and five inches thick supported at the end next the field piece by an iron flange of the field piece, and at the other end by the friction of the end of the brace against the perpendicular side wall of the pit, the brace having been put in place by resting one end on the flange and driving down the other end with a sledge. All this had been done before the plaintiff had any connection with the work. At the end of the brace which was next the field piece there rose perpendicularly above the level of the floor a part of the field piece so that the brace could not be used for passage directly across the pit, but by stepping from the floor at the end on one side of the pit to the brace and then to the floor one wishing to get from one side to the other could cross a corner of the pit and save a little distance. The part of the pit unoccupied by the field piece was three and one half feet wide and about twenty feet long, and

was open except for the brace.  In the prosecution of the work many pieces of timber were used for blocking, and were moved from time to time as the work demanded, and when not in use were left on the floor of the room making it difficult to get around.  The pit was near one corner of the room and the end of the pit near which was the brace was near the door of the room.

The plaintiff had worked for a week in the place described, as a general laborer, moving blocking and doing other things. During this time as he testified he had seen other workmen and the superintendent frequently use the brace by stepping on it in order to cross the pit, and he testified that he thought the brace was put there to go across.  Having occasion to go to a workman who was in the pit, the plaintiff instead of passing around the end of the pit, stepped upon the brace and so crossed.  Immediately thereafter having occasion to go to the side of the pit from which he first started, in attempting to return he again stepped upon the brace, when it gave way causing him to fall into the pit.  He sues under the employers' liability act to recover for injuries occasioned by the fall, contending that he was hurt by reason of the negligence of the superintendent in charge, in not having the brace supported at the end next the wall and in allowing it to be used as a bridge for passage without warning that one end was unsupported.

The circumstances stated distinguish the present case from the decisions on which the plaintiff relies.  Here it is plain that the stick of timber which gave way was designed only as a brace.  There was no occasion for a bridge across the pit at a point only two feet from the end of the pit, and the rising of the part of the field piece in the middle of the pit's width at one end of the brace showed so plainly that the brace was not a bridge that any one who undertook to step upon it must be taken to have known that it was not put there as a bridge or way.  If the plaintiff thought it was put there to go across upon he was negligent in his examination of the place where he was set to work and in his deductions from what he saw, and so in his use of the brace as a bridge.

In *Dolphin* v. *Plumley*, 167 Mass. 167, the saw mill was in permanent use, and the path which the plaintiff took was if not

the only one, that which upon the evidence was ordinarily used to go from one end of the mill to the other. So in *Hanlon* v. *Thompson*, 167 Mass. 190, the injury was caused by the rottenness of a floor intended to be permanent, and over which the evidence tended to show that the men were expected to pass. In *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, the hoist was designed to support and to raise and lower heavy articles with safety and there was not only evidence tending to show that the workmen commonly but continually used it, and that it was the only means of access to and from their work which their own employers had furnished, the only other means being ladders furnished by other contractors upon the same building, and also that both of the defendant's superintendents had told their workmen to ride on the hoist in place of using the ladders, because it saved time. In *Connors* v. *Merchants Manuf. Co.* 184 Mass. 466, the trap door when closed formed part of the mill floor, but even this constituted no invitation to use it for passage, another way being provided. In the present case the floor of the room gave access to every portion of the premises which the plaintiff's work required him to visit. The floor itself was in order, and if the pieces of blocking which encumbered it were in the plaintiff's way he could remove them from the place where they had been left by himself or his fellow workmen, or he could step over them. When he chose to step upon a brace plainly designed as a brace and not as a bridge, he did so at his own risk no matter how frequently the same risk had been taken by himself or others.

*Verdict for the defendant to stand.*