FRANK C. PERKINS, Admr., *vs.* OXFORD PAPER COMPANY.

Oxford.    Opinion March 17, 1908.

*" Immediate Death Statute."* *Construction of Same.* *Master and Servant.*
*Contributory Negligence.* *Public Statutes, Mass., 1887, chapter 24, section 3.*
*Statute 1848, chapter 70 ; 1855, chapter 161; 1891, chapter 124,*
*section 1.* *Revised Statutes, chapter 89, sections 8, 9, 10.*

Revised Statutes, chapter 89, section 9, provides as follows : "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as shall amount to a felony." *Held :* That this statute was designed to cover cases of immediate death, which include cases both of instantaneous death and of total unconsciousness following immediately upon the accident and continuing until death, and the duration of that period of unconsciousness is immaterial.

When there is a comparatively safe and likewise a more dangerous way known to a servant, by means of which he may discharge his duty, it is negligence for him to select the more dangerous method and he thereby assumes the risk of injury which its use entails.

The plaintiff's intestate was employed as an engineer in the defendant's mill and had been so employed for about five years prior to his death. In attempting to pass under a large and rapidly moving belt shackled with "Jackson Hooks," so called, the nuts and bolts of which projected about one inch from the surface of the belt, he was struck on the head by the hooks and knocked to the floor in an unconscious condition and remained unconscious until his death seventy-five hours later. The plaintiff administrator then brought an action against the defendant under the provisions of Revised Statutes, chapter 89, section 9. The defendant contended (1) that this form of action could not be maintained as a matter of law, because the death was not immediate; (2) That the plaintiff's intestate was guilty of contributory negligence.

*Held :* (1) That the action was properly brought under the statute although the plaintiff's intestate survived the accident seventy-five hours. (2) That the plaintiff's intestate was guilty of contributory negligence as there was no necessity for his passing under the belt at a point where he was liable to be struck by it.

On motion and exceptions by defendant. Motion sustained. Exceptions not considered.

Action on the case brought under Revised Statutes, chapter 89, section 9, by the plaintiff as administrator of the estate of Arthur N. Perkins, deceased intestate, for the benefit of the widow of said Arthur N. Perkins, and against the defendant corporation to recover damages for the death of the said Arthur N. Perkins, such death having been caused by the alleged negligence of the defendant corporation. The declaration in the plaintiff's writ is as follows :

"In a plea of the case. For that the defendant, on the 23rd day of November, 1906, was the owner, and operator of a certain mill, with its machinery appurtenances and appliances situated in Rumford, in the County of Oxford, and State of Maine, used for the manufacture of pulp and paper. And the plaintiff avers, that it was then and there the duty of said defendant to provide a safe and suitable place for its employees to perform their labor, and also safe and suitable machinery and appliances. And the plaintiff avers that the said defendant, on said 23rd day of November, was unmindful of its duty in this behalf, in that it then and there unlawfully and negligently failed to provide either a safe and suitable place for his intestate to perform his labors, or safe and suitable machinery or appliances, as required by law. And the plaintiff avers, that as a part of the machinery of said mill, owned and operated by the defendant as aforesaid is an engine numbered four, with all of its appurtenances and appliances about which it was the duty of the plaintiff's intestate, then and there to be employed. And it is averred, that as a part of the appliances of said mill, then and there owned and operated by the said defendant, was a large belt known as the speed or power belt, which was then and there fastened, or connected, with a large wheel or pulley on said engine, and then and there extending to the main shaft in said mill, and which moved with great rapidity. And it is averred, that the defendant then and there unlawfully, carelessly and negligently connected the two ends of said belt, by means of bolts, clasps· and nuts, a system of connection known to the mill trade as "Jackson

Hooks;" that the said defendant, then and there unlawfully, carelessly and negligently, allowed said bolts by which the said belt was then and there connected, to project a great distance from the belt. And the plaintiff avers that on the said 23rd day of November, and for a long time prior thereto, his intestate, Arthur N. Perkins, was then and there employed by the said defendant for hire, in its mill, as aforesaid, as engineer, and that it was the duty of the plaintiff's intestate to labor around, and about the said engine, its appurtenances and appliances. And the plaintiff avers, that while his intestate was then and there employed about said engine in the regular performance of his duty, and while in the exercise of due care and caution, and without fault on his part, due wholly to the unlawful carelessness and negligent manner, by which the said belt was then and there connected, by the said defendant, your plaintiff's intestate was then and there suddenly and forcibly struck in the head, by one of the bolts aforesaid, then and there receiving injuries from which he then and there immediately died. Whereby Lula Perkins, wife of the said Arthur N. Perkins, for whose benefit this action is brought, suffered great loss and damage, and whereby and by virtue of the statute, in such case made and provided, an action has accrued to the plaintiff, in his capacity as administrator, as aforesaid, to have and recover of the said defendant said loss and damage, for the benefit of the said Lula Perkins. Yet the said defendant, though often requested, has not paid the same, but neglects and refuses so to do, to the damage of said plaintiff (as he says) the sum of five thousand dollars, which shall be made to appear, with other due damages; and have you there this writ with your doings therein."

Plea, the general issue. Tried at the May term, 1907, Supreme Judicial Court, Oxford County. Verdict for plaintiff for $3,250. The defendant then filed a general motion to have the verdict set aside. Several exceptions were taken by the defendant during the trial but the same were not considered by the Law Court.

The case fully appears in the opinion.

*Matthew McCarthy and Wm. H. Newell*, for plaintiff.

*Bisbee & Parker*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, JJ.

CORNISH, J. This is an action on the case brought under section 9 of chapter 89 of the Revised Statutes, for the benefit of the widow of Arthur N. Perkins the intestate, for the death of said intestate caused by injuries received by him while in the employment of the defendant corporation. The case is before this court on motion and exceptions by defendant.

There was little conflict of testimony. The undisputed facts are as follows. Arthur N. Perkins at the time of the accident was thirty-two years of age and had been employed by the defendant as an engineer for about five years. He had charge of engines number three and four and their appurtenances situated in machine room number two. These engines and the shafting and pulleys connected therewith were similar in construction. A large belt known as the step speed belt extended from the pulley on the front cone shafting, (said pulley being set between piers on the floor) to the machine shafting at the upper part and rear of the room. The lower side of this belt moved from the machine shafting downward on an incline toward the pulley and its height from the floor varied from a few inches at the pulley to eight or nine feet at the machine shafting. The belt was eighteen inches wide, fastened together with Jackson hooks so called, the nuts and bolts of which projected about one inch from the surface and, when the machinery was in operation, as at the time of the accident, the belt moved at the rate of a mile per minute. The distance on the floor from the center of the front cone shafting to a point beneath the center of the machine shafting was about thirty feet.

Standing by the front cone shafting and looking toward the belt and the rear wall, one would see at the left of the belt and about eight inches from it two upright steel columns, the nearest nine feet distant and the farthest twenty-one. Between the farthest column and the rear wall, a distance of about nine feet, but a little toward the left, was a pump, so placed that there was a clear space of three and one-half feet between it and the column. At the left of these columns was a wide and unobstructed passageway.

On the other side, at the right of the speed belt and about ten feet from it, was a cross belt connecting the front cone shafting with the rear cone shafting. The engineer at times in the course of his duty, had occasion to visit this intervening space and this could not be reached from the broad passageway on the left without going under the speed belt at some point. At no point between the first and second columns could a man cross without stooping, but at any point beyond the second column, stooping was unnecessary as the height of the belt varied from six feet three inches to nine feet. At the time of the accident Mr. Perkins started to go beneath the rapidly moving belt at a point between the two steel columns where the height of the belt above the floor was four feet nine and three-fourths inches. His height was five feet four inches. As he crossed, he stooped, but not enough, his head was struck by the hooks in the belt and he was knocked to the floor in an unconscious condition. The accident occurred at about 10 A. M. November 23, 1906, and he remained unconscious until 1 P. M. on November 26, a period of seventy-five hours, when he died.

1. FORM OF ACTION.

The first point raised by the defense is that this action cannot be maintained as a matter of law, because death was not immediate.

It is admitted that the intestate survived seventy-five hours after the injury, taking nourishment that was administered, but was in an unconscious condition during the whole period, so that even an operation upon the skull was performed without the use of anæsthetics. The question is raised sharply whether sections 9 and 10 of chapter 89 of the Revised Statutes should be construed to cover such a case. The history of this legislation and the construction put upon it by the court are interesting and important. At common law no value was put upon human life to be recovered in the way of damages. At common law too, a right of action to recover damages for personal injuries did not survive. But by an early statute, now Revised Statutes, chapter 89, section 8, those actions that could be maintained at common law for personal injuries were made to survive and could be prosecuted by the personal representatives whether an action had been brought in the

lifetime of the injured party or simply the cause of action had accrued and the injured party had died before suit was actually brought.

A remedy by indictment against steamboats and railroads in case the life of a person was lost through the carelessness of the respondent's servants was provided by chapter 70 of the Public Laws of 1848, and the limit of recovery extended to $5000 by chapter 161 of the Public Laws of 1855. This statute was construed to cover cases of immediate death only. *State* v. *Maine Central Railroad Company*, 60 Maine, 491. That case came before the court on a demurrer to the indictment, which alleged that the accident occurred on June 27th, and death ensued on June 29th, but did not state whether the injured party was in a conscious or unconscious condition during that time, and the court did not attempt to define the word immediate as used in that connection.

In *State* v. *Grand Trunk Railway*, 61 Maine, 114, a similar proceeding by indictment, the court in re-affirming the essential element of immediate death also call attention to the conscious condition of the sufferer in these words: "In this case the evidence shows clearly and beyond a reasonable doubt, that Pullen, the person injured did not die immediately. He not only survived several hours, but during most of the time was conscious and able to converse intelligently. A right of action, therefore accrued to him which, upon his subsequent death, descended to his personal representatives."

A similar statute giving remedy by indictment was construed by the Supreme Court of Massachusetts not to be limited to cases where death was instantaneous. *Commonwealth* v. *Metropolitan R. R. Co.*, 107 Mass. 236.

Chapter 124 of the Public Laws of 1891, entitled "an Act to give a right of action for injuries causing death" extended, in section 1, the remedy to a civil action in these words:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then,

and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured and although the death shall have been caused under such circumstances as shall amount to a felony." Revised Statutes, ch. 89, sec. 9.

It will be noted that in this statute neither the word instantaneous nor immediate is used. The test is not life or death, as was applied by the Supreme Court of Massachusetts in construing the statute relating to the survival of actions in *Kearney* v. *R. R. Co.*, 9 Cush. 108 ; *Hollenbeck, Admr.*, v. *R. R. Co.*, 9 Cush. 478, and *Bancroft* v. *B. & W. Ry.*, 11 Allen, 34. The statute there under consideration provided that "the action of trespass on the case, for damage to the person, shall hereafter survive, so that in the event of the death of any person entitled to bring such action, or liable thereto, the same may be prosecuted or defended by or against his executor or administrator, in the same manner as if he were living." It is similar to section 8 of chapter 89 of the Revised Statutes of Maine. The court there logically held that the only question involved in the construction of that statute was whether the sufferer survived the injury. If he did, a right of action accrued without regard to the consciousness or mental capacity of the sufferer.

A right of action could only survive if it once existed and it could exist if the sufferer survived the injury for any appreciable time. The test was the continuance of life after the accident and not the length of time nor want of consciousness during that time.

Following this construction, the Massachusetts court in a subsequent case, where the injured party survived ten minutes in an unconscious state, logically held that a cause of action accrued to the intestate in his lifetime and survived to his personal representative, but as there was no evidence to warrant the jury in finding that the deceased endured any conscious pain or suffering, further held that only nominal damages could be recovered. *Mulchahey, Admx.*, v. *Washburn Car Wheel Co.*, 145 Mass. 281.

Counsel for defendant cite these cases as decisive of the one at bar and claim that the Act of 1891 should be construed with equal

strictness, that under the facts here a right of action accrued to the sufferer to be enforced by his personal representative and that this statutory action cannot be maintained.

This brings us to the construction of the statute of 1891, which is quite different from that of the survival statute before considered. What did the legislature mean by granting a right of action although death ensues, where the act, neglect, or default is such as would have "entitled the party injured to maintain an action and recover damages in respect thereof," if death had not ensued. We think the plain intent was to give not an empty right of action but a right that should bring substantial damages, not merely a right to sue but a right to recover.

Prior to its passage if death was instantaneous, there was no remedy whatever and if the injury was immediately followed by a comatose condition for a longer or shorter period and that by death, there was no real remedy, for although the personal representative had a right of action under the survival statute, the damages were nominal as in *Mulchahey, Admx.,* v. *Washburn Car Wheel Co.,* supra. The right was a husk without the kernel. To obviate this injustice and to grant compensation to the family of the injured party the Act of 1891 was passed, and a fair, just and reasonable interpretation of that statute is that it gave relief where no substantial relief existed before, and that includes both injuries producing immediate death where no action could before be brought, and those producing at once a condition of insensibility, continuing without cessation until death, where an action could be brought but only nominal damages could be recovered.

Whether the unconscious condition continues for minutes or hours or days, the reason of the rule still prevails and the statute applies.

The decisions in this State are in harmony with this view. The court held in *State* v. *Maine Central R. R. Co.,* 60 Maine, 490, and *State* v. *Grand Trunk Railway,* 61 Maine, 114, under the indictment statute that death must be immediate, without attempting to define the precise meaning of the term. In *Sawyer* v. *Perry,* 88 Maine, 42, which came to this court on a demurrer to the declaration and was the first case under the civil act of 1891, the court

for the first time defined the meaning of "immediate," in these words, the same Justice drawing the opinion as in both the indictment cases above referred to.

"We do not say that the death must be instantaneous, we have never so held. Very few injuries cause instantaneous death. Instantaneous means done or occurring in an instant, or without any perceptible duration of time; as the passage of electricity appears to be instantaneous. . . . And when we say that the death must be immediate, we do not mean to say that it must follow the injury within a time too brief to be perceptible. If an injury severs some of the principal blood-vessels and causes the person injured to bleed to death, we think his death may be regarded as immediate though not instantaneous. . If a blow upon the head produces unconsciousness and renders the person injured incapable of intelligent thought or speech or action, and he so remains for several minutes and then dies, we think his death may very properly be considered as immediate though not instantaneous. Such a discrimination may be regarded by some as excessively exact or nice, and therefore hypercritical. But, in stating legal propositions it is impossible to be too exact; and while other courts, and some writers of text books, have used indiscriminately the words instantaneous and immediate, and the adverbs instantaneously and immediately, we have not regarded them, in this class of cases, as meaning precisely the same thing, and have preferred to use the words immediate and immediately, as being more comprehensive and elastic in their meaning, than the words instantaneous and instantaneously, and better calculated to convey the idea which we wish to express. Of course, an instantaneous death is an immediate death; but we have not supposed that an immediate death is necessarily and in all cases an instantaneous death."

The word immediate is, as the court say, an "elastic term," depending upon the facts of each case. This construction recognizes a statutory right of action in case of an injury producing unconsciousness that continues until death. The doctrine admitted, it matters not how long a period of unconsciousness may intervene.

In *Conley* v. *Portland Gaslight Co.*, 96 Maine, 281, which also came to this court on demurrer to the declaration, the court emphasizes the same view in the following language :

"As construed by our court in *Sawyer* v. *Perry*, supra, it is obvious that the statute of 1891 in question, affords a right of action for "injuries causing death" substantially like that given to employees by the Employers' Liability Act in Massachusetts. The third section of that Act (c. 24, P. S. of 1887) gives a right of action "where an employee is instantly killed, or dies without conscious suffering ;" and it was held in *Martin* v. *Boston and Maine Railroad*, 175 Mass. 502, that an action could not be maintained under this statute in a case where the injured person survived and endured conscious suffering less than one minute after the injury. See also *Hodnett* v. *Boston & Albany Railroad*, 156 Mass. 86 ; *Green* v. *Smith*, 169 Mass. 485, 61 Am. St. Rep. 296 ; *Wiley* v. *Boston Electric Light Co.*, 168 Mass. 40.

"Whether, in the case at bar, it might not reasonably be considered an immediate death within the meaning and purpose of our statute, if the decedent immediately became unconscious after his injury and remained in a comatose state for twenty minutes or even for several hours or days, until life became extinct, it is unnecessary here to determine."

In the case under consideration this question is squarely raised and it is the opinion of the court that the suggestion in *Conley* v. *Portland Gaslight Co.*, is sound and that the statute of 1891 was designed to cover cases of immediate death, which include cases both of instantaneous death and of total unconsciousness following immediately upon the accident and continuing until death, and the duration of that period of unconsciousness is immaterial. The defendant's contention upon this point fails.

2.    CONTRIBUTORY NEGLIGENCE.

The cause of the accident was the intestate's act in attempting to pass beneath the swiftly moving belt at such a point that he was hit by the Jackson hooks. The danger was an obvious one, at least the belt itself was obvious, and the danger of contact with it, what-

ever the fastening, was apparent to any man using his senses. It was not necessary that he should appreciate the danger in all its details. *Connelly* v. *Woolen Co.*, 163 Mass. 156. But the evidence is convincing that the intestate did know and appreciate the particular danger of which complaint is now made. These hooks had been placed upon the belt about six months before the accident, and had been in continuous use since. Admitting that they could not be seen when the belt was in motion, yet the engine was shut down every Sunday morning for the day in order that the engine, shafting and belting might be inspected and the plaintiff as engineer was present during that time. He had full opportunity to know and must have known what these fastenings were. This is confirmed by the testimony of two witnesses, one of whom testified that Mr. Perkins helped him mend the belt on engine No. 3, which was similar to No. 4 and under Perkins' charge, and the other testified that Perkins once told him he "would hate to get hit by them." The conclusion that Perkins knew the exact condition is irresistible. Assuming that duty called the intestate to the open space beyond the belt, he had two routes open before him by which to reach it, one admittedly safe, the other attended with danger; one enabling him to pass beneath the belt between the second pillar and the rear wall, where there was a passageway of three and a half feet between the second pillar and the pump, and a clear space between the top of his head and the belt of from one to three feet, and the other between the two pillars where the belt was about six inches below the top of his head and he must stoop low if he could pass beneath it at all.

He chose the latter, the obviously unsafe route and he alone must bear the consequences. In *American Linseed Co.* v. *Heins*, 141 Fed. Rep. 49, the employee made a similar choice and on this point the court say: "There was no necessity justifying his conduct in passing over the revolving drum. He could have reached the place to which he desired to go by means of a platform which at least in comparison with the way he did adopt was entirely safe. His failure to choose the safe way was under the decisions of this court negligence."

In *Morris* v. *Railway Co.*, 108 Fed. Rep. 747, the court declare the rule as follows: "When there is a comparatively safe and a more dangerous way known to a servant, by means of which he may discharge his duty, it is negligence for him to select the more dangerous method and he thereby assumes the risk of injury which its use entails." To the same effect are *Russell* v. *Tillotson*, 140 Mass. 201; *Galvin* v. *R. R. Co.*, 162 Mass. 533; *Leard* v. *Paper Co.*, 100 Maine, 59. This was not the case of an emergency call and a quick hurrying order from a foreman which the servant instinctively obeyed, as in *Millard* v. *Railway Co.*, 173 Mass. 512, and *Jensen* v. *Kyer*, 101 Maine, 106. Here the servant acted voluntarily and deliberately and made the short cut which he must have known was dangerous had he stopped to think, or else he attempted it thoughtlessly. Either view would prevent recovery.

It is fair to assume that he did think of the danger and relied upon his own judgment to avoid it because the only witness who saw the accident states that he saw him stooping as he approached the belt. But to attempt to pass voluntarily and unnecessarily beneath a rapidly moving belt at such a point that he was liable to be struck by it and owing to his own error in judgment was in fact struck by it, was clearly negligence on his part.

Analogous cases of a set screw upon a revolving shaft emphasize this accepted doctrine. *Rooney* v. *Cordage Co.*, 161 Mass. 153; *Ford* v. *Mount Tom Sulphite Co.*, 172 Mass. 544; *Demers* v. *Marshall*, 172 Mass. 548; *Same* v. *Same*, 178 Mass. 9. In *Kennedy* v. *Merrimack Paving Co.*, 185 Mass. 442, where an experienced machinist attempted to step over a revolving shaft, the plaintiff's right of recovery was denied in these words: "The plaintiff was a man of experience; and, while he testified that he did not know of the existence of the old collar on the shaft, he had ample opportunity to ascertain its existence. The defendant was not bound to change his machinery or to point out to the plaintiff the fact of the existence of the set screw or the collar. The danger from the revolving shaft was apparent, and as such shafts have collars fastened to them by set screws, a fact well known to the

plaintiff, his getting so near the shaft as to be caught was an act of negligence.   Moreover he could have gone by a safer way, and, unless he chose to take the risk of stepping over a revolving shaft, he could have stopped the engine, over the running of which he had full control."

The fact that others took the same route in doing the same work is immaterial.   *Gillette* v. *Electric Co.*, 187 Mass. 1.   That fact rendered the way no less dangerous nor their conduct less negligent. It is common knowledge that experience sometimes renders men careless in the performance of duties and leads them to take chances that the ordinarily prudent man under the same circumstances would not take.   It is needless to multiply authorities.   After a careful consideration of the whole evidence, we feel satisfied that the unfortunate accident to the plaintiff's intestate is attributable to the want of due care on his own part.

This view of the case renders it unnecessary to consider the question of negligence on the part of the defendant or the exceptions.

*Motion sustained.*
*Verdict set aside.*