(63 South. 609.)

No. 19,537.

INGERSOL v. NATIONAL SASH & DOOR FACTORY.

(Dec. 1, 1913.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT (§§ 234, 259*)—INJURY TO SERVANT—RIGHT OF RECOVERY—CONTRIBUTORY NEGLIGENCE.

In a petition filed on behalf of a minor (who attains majority, pending the suit, and adopts the petition as his own), it is alleged, in effect, that plaintiff had been working for defendant, in a sash and door factory, for three years; that he was 19 years old and an experienced apprentice; that he called the attention of the superintendent to a pulley that needed "babbitting"; that he was directed to place a ladder, with spikes in the toe, on a flooring covered with shavings to a depth of three feet, and ascend it, for the purpose of throwing the belt off the pulley and tying it, as a necessary preliminary to the babbitting of the pulley; that defendant and its employés knew, or should have known, that shavings afford an insecure resting place for a ladder; that he, nevertheless, rested the ladder on the shavings, instead of sinking the spikes into the flooring, and, having ascended it, undertook to throw the belt off the pulley; that the belt was rotten, gummy, and sticky, and adhered to his hands, so as to require some extra effort (which would not have been required if the belt had been sound) to handle it; that such effort, added to its insecure footing, caused the ladder to shift its position, and turn, with the result that plaintiff's wrist was caught and his arm drawn into the pulley and shafting, and mashed. It is further alleged that the immediate and proximate causes of the accident were: (1) The insecure and uncertain footing of shavings for the ladder; and (2) the unsafe condition of the belting, which, being rotten, gummy, and sticky, adhered to his hands, so that his efforts to disengage them contributed to the turning of the ladder and disturbed or destroyed his balance thereon.

*Held,* the exception of no cause of action was properly maintained. *Held,* further, that, even if plaintiff had not included himself among those who knew (as he alleges), or should have known, that a pile of shavings is an insecure resting place for a ladder, we should feel bound to assume that a young man, such as he describes himself, who had devoted three years to learning his trade, who alleges that he was an experienced apprentice, and who is not shown to be lacking in intelligence, would know that much.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 684–686, 706–709, 837–843; Dec. Dig. §§ 234, 259.*]

*(Additional Syllabus by Editorial Staff.)*

2. WORDS AND PHRASES—"BABBITT METAL"—"BABBITT"—"BABBITTING JIG."

"Babbitt metal" is a soft white anti-friction metal, of varying compositions; any of several alloys similarly used. To "babbitt" is to line or furnish with babbitt metal. And "babbitting jig" is a molding box in which bearings or bearing brasses are placed while being babbitted. A short section of shaft is placed inside the bearing or between the brasses to mold the inside correctly.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Doris Ingersol for use and benefit of minor son, Edward Ingersol, against the National Sash & Door Factory. From judgment for defendant, plaintiff appeals. Affirmed.

George W. Flynn, of New Orleans, for appellant. T. M. & J. D. Miller, Gordon Boswell, and Merrick, Lewis, Gensler & Schwarz, all of New Orleans, for appellee.

## Statement of the Case.

MONROE, J. Plaintiff brought this suit to recover, for the use and benefit of his minor son, damages for personal injuries sustained by the latter whilst in the employ of the defendant, and the minor (thereafter, attaining his majority) substituted himself in place of his father and adopted the petition filed in his behalf. Defendant answered, and the case was called for trial, whereupon defendant, through counsel, objected to the introduction of evidence, on the ground that the petition discloses no cause of action; and, after some argument and objection to the course proposed, the question presented was taken under advisement and the case

continued. Thereafter the exception (no cause of action) was reduced to writing, filed, and maintained, and there was judgment dismissing the suit, from which judgment plaintiff prosecutes this appeal. The question of the competency, or regularity, of the proceedings is pretermitted in this court, and the case is presented solely upon the merits of the exception. The judge a quo assigns the following reasons for his ruling, to wit:

"From the allegations of plaintiff's petition, the court is of opinion that plaintiff knew of the defective pulley, the danger of repairing it, and also the insecure foothold of the shavings for the ladder on which plaintiff was to stand while fixing the pulley, and that, knowing the danger, he assumed the risk."

The petition, from the face of which our learned Brother reached the conclusion thus stated, in so far as it bears upon the question at issue, reads as follows:

"That his minor son, Edward, was during the month of April, 1911, employed [by defendant] as an experienced apprentice, in the molding department, and worked in said capacity for three years prior to the accident hereinafter set forth, acting all the while under the direction of said factory, its superintendent, agents, and vice principals. That on April 6, 1911, he was told, by Walter Potter, who was assistant to the superintendent, John Brinker, to babbitt a loose pulley, which had had no babbitt for over a week previous, which fact was known to the defendant company, its agents and employés, and which was also known to your petitioner's son, who advised the superintendent of the condition three days prior to the accident. * * * That the said pulley was in bad condition—the gum material of which it was made being worn out and sticky from constant use—and should have been replaced by a better and more substantial one, which fact your petitioner only learned after the accident. * * * That with the purpose of readjusting and repairing said pulley, your petitioner's minor son * * * was directed to place a ladder on a flooring covered with shavings over three feet deep, and ascend the ladder, for the purpose of tying the belt. That in the act of throwing the belt off, the ladder, the bottom of which had spikes, turned around to the left, while your petitioner's son was in the act of tying the belt, to keep it off the shaft, your petitioner's son's left wrist was caught, pulling him into the shafting, shoving his left arm in the 36-inch pulley, lacerating and mashing his left arm, so that, after an investigation, * * * amputation of the arm from the elbow became necessary. * * * That the belt was of gum, and had become rotten, from the constant use of 2½ years, and was not fit for use, because of its gummy and sticky condition, and which was one of the proximate and immediate causes of the accident; the gummy and sticky condition of the belt being such that it adhered to his son's fingers and hands, which compelled him to over-exert himself in order to release its hold, and which extra exertions contributed to the turning of the ladder, which was standing on a very uncertain, unstable, and insecure foundation of shavings, the condition of the belt being well known to the defendant company, for immediately after the accident, they replaced it by a new one. * * * That the immediate and proximate cause of the accident * * * was: (1) The insecure and uncertain foothold, of shavings, for the ladder, which fact was known, or should have been known, by the defendant, its officers, agents, and employés; and (2) the rotten and unsafe condition of the belting, which, from its gummy and unfit condition, rendered it unsafe to handle, and contributed to the accident, by the gum adhering to his fingers, so that he could not remove his hands in time to avoid the accident, and because his effort to withdraw his hands contributed to the shifting of the ladder, by the ladder turning around, compelling petitioner's son to lose his balance on the ladder. That, notwithstanding the task assigned to petitioner's son was extremely dangerous and risky, which fact was known to the company's agents and representatives, and which fact was not known to the petitioner's said son, his said son was ordered to go up the ladder, the ends of which were placed on an insecure and unsafe foundation of shavings, endangering his life, and resulting in the loss of his left arm from above the elbow, destroying his usefulness in a trade in which he had almost completed his apprenticeship. * * * That his said son * * * was, at the time of the accident, 19 years of age," etc.

## Opinion.

[2] "Babbitt metal" is defined to be:

(a) A soft white anti-friction metal, of varying compositions, as of 4 parts of copper, 8 of antimony, and 24 or 96 of tin (the alloy with the smaller proportion of tin being called 'hardening,' that with the greater, 'lining'); (b) any of several alloys, similarly used."

To "babbitt" is "to line or furnish with babbitt metal." And "babbitting jig" is "a molding box in which bearings or bearing brasses are placed while being babbitted. A

short section of shaft is placed inside the bearing or between the brasses to mold the inside correctly." Web. Int. Dic.

[1] Rearranging and condensing somewhat the allegations of the petition hereinabove set forth, we find that they may be stated as follows, to wit: That at the time of the accident plaintiff was 19 years of age, was in defendant's employ, "as an experienced apprentice," and had been employed by defendant for three years; that he became aware of the fact that one of the pulleys needed "babbitting," and so advised defendant's superintendent. That in order that that work should be done, he was directed to place a ladder on a floor covered with shavings, and ascend the ladder, "for the purpose of tying the belt." That "the insecure and uncertain foothold of shavings for the ladder was known, or should have been known, to defendant, its officers, agents, and employés, but that plaintiff did not know, until after the accident, that the belt was rotten, gummy, and sticky. That in the act of throwing it off the pulley, it adhered to his fingers and hands, and that the extra effort required to release his hands contributed to the turning of the ladder," which was standing on a very uncertain, unstable, and insecure foundation of shavings, and, by reason of which turning his "left wrist was caught, pulling him into the shafting, shoving his left arm into the 36-inch pulley, lacerating and mashing his left arm," etc. " * * * That the immediate and proximate cause of the accident and injury * * * was: (1) The insecure and uncertain foothold of shavings for the ladder; * * * (2) the rotten and unsafe condition of the belting, which from its gummy and unfit condition rendered it unsafe to handle, and contributed to the accident by the gum adhering to his fingers, so that he could not remove his hands in time to avoid the accident, and because the effort to withdraw his hands contributed to the shifting of the ladder, by the ladder turning around," compelling him "to lose his balance on the ladder."

At one place in the petition it is alleged "that the said *pulley* was in bad condition, the gum material of which it was made being worn out and rotten and sticky from constant use," etc., but we take it that the allegation was made inadvertently, as pulleys are not made of "gum material," and the adjectives, "rotten, gummy," and "sticky," are subsequently applied to the belt.

It is not alleged that plaintiff was directed to babbitt the pulley, but, as we understand the petition, he was directed, as a necessary preliminary to that work, to throw the belt off the pulley and tie it back, and was engaged in throwing it off when it stuck to his hands, whereupon he endeavored to release his hands, and his efforts to that end added to the insecure footing of the ladder, caused the ladder to shift its position by turning, as a result of which his wrist was caught, and he was pulled into the shafting and pulley and his arm was mashed, etc. It is not alleged that he was directed to throw the belt off the pulley and tie it back while the pulley or shafting were in motion, and though it is evident that he undertook the job under those conditions, defendant is not charged with fault on that account. The idea intended to be conveyed by the petition appears to be that there were two contributing causes, without both of which the accident would not have happened; that is to say, though plaintiff made an effort to release his hands from the sticky belt, which effort would not have been required if the belt had been in proper condition, there would have been no accident, on that account, if the ladder had been securely planted; and, on the other hand, though the ladder was insecurely planted, there would have been no accident on that account if the sticky belt had not necessitated such effort. In that way of putting

the case, the nearer, or proximate, cause of the accident would seem to have been the insecure and uncertain footing of the ladder. Plaintiff, however, alleges, in effect, that it was he himself who planted the ladder; that the bottom, or toe, of the ladder had spikes in it; that "the insecure and uncertain foothold of shavings for the ladder * * * was known, or should' have been known, by the defendant company, its officers, agents and *employés;*" that he was 19 years old, and was then employed by defendant as an experienced apprentice, and in that capacity was directed, with a view to the babbitting of the pulley, "to place a ladder on a flooring, covered with shavings over three feet deep, and ascend the ladder for the purpose of tying the belt." If, then, plaintiff sank the spikes that were on the toe of the ladder into the loose shavings, with which the floor was covered, instead of into the floor, and if, as he alleges, he knew that it was unsafe so to do, and the insecurity of the ladder, thus placed was the proximate cause of the accident, it is clear that his petition discloses no cause of action to recover the damages here claimed; for the injuries for which the damages are claimed must be attributed to his fault, and not to the fault of the defendant. We may add that, even if plaintiff had not included himself among those who knew (as he alleges), or should have known, that a pile of shavings is an insecure resting place for a ladder, we should feel bound to assume that a young man, 19 years old, who had devoted three years to learning his trade, who describes himself as "an experienced apprentice," and is not shown to be lacking in intelligence, would know that much. Carriere v. McWilliams, Ltd., 104 La. 678, 29 South. 333; Ball v. V. S. & P. R. R. Co., 123 La. 16, 48 South. 565; McCants v. Tremont Lumber Co., 128 La. 489, 54 South. 967; Demers v. Marshall, 178 Mass. 9, 59 N. E. 454.

Judgment affirmed.