JOHN J. MORRISSEY *vs.* BOSTON AND MAINE RAILROAD.
SAME *vs.* ALBERT W. PIKE & others.

Suffolk. March 15, 1918. — May 23, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence,* Of owner or contractor toward employee of another contractor in construction of building, Invited person, Licensee.

A railroad corporation which has made contracts with various persons for doing different parts of the work of constructing a steel framed building upon its land for its uses, the work to be done by the contractors exclusively although under the direction and control and to the satisfaction of the chief engineer of the railroad corporation, whose decision as to the true construction and meaning of the drawings and specifications was to be final, cannot be held liable in an action against it for personal injuries suffered by an employee of one of the contractors and due to his falling by reason of the turning of an unfastened purlin which he took hold of as he was descending a ladder while assisting in straightening a truss which an inspector, acting for the chief engineer of the railroad corporation, had determined was not placed in accordance with the drawings and specifications.

In such an action, the mere facts, that the inspector of the defendant, in reply to an inquiry by the foreman under whom the plaintiff worked as to where spikes could be obtained to use in carrying out the straightening of the truss, replied, "There is lots of them up on the roof," and that the plaintiff thereupon was ordered by the foreman to go to the roof for the spikes, whence he was returning when he fell from the ladder, will not warrant a finding that the defendant was engaged in any way in the work being done when the plaintiff was injured.

If one of the contractors, not the plaintiff's employer, in the construction of the building above described, had placed a ladder against the side of the building, which the plaintiff used in going to the roof when the foreman ordered him to do so, such contractor cannot be said to have invited the plaintiff to use the ladder for his purposes, and, in an action by the plaintiff against such contractor, the plaintiff must be treated at best as a licensee of the defendant.

Where, in an action by the same plaintiff against such contractor for the personal injuries above described, it appears that the building still was in an unfinished state, that in some parts of the building purlins were on edge as they would be

if bolted into position, while others were lying flat on the struts, some of which the plaintiff walked over in passing along between the ground and the roof, that the plaintiff was an experienced structural iron worker and that he knew that, in working in a place high above the ground it was necessary to be careful, it cannot be held that the defendant owed to the plaintiff any duty as to the purlin, the turning of which caused his fall, nor that the purlin in the condition and position in which it was constituted a trap.

TWO ACTIONS OF TORT for personal injuries received when the plaintiff fell from a building being erected for the defendant in the first action by contractors for different parts of the work, among whom were the McClintic, Marshall Company, the plaintiff's employer, and the defendants in the second action. Writs dated July 3, 1913.

In the Superior Court the cases were tried together before *Dana,* J. The material evidence is described in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant in each case and reported the cases to this court for determination, the parties agreeing that, if the judge's rulings were right, judgments were to be entered on the verdicts; if the ruling was wrong in either case and not in the other, judgment was to be entered for the defendant in the case in which the ruling was correct and for the plaintiff in the other case in the sum of $4,000 and interest, and, if the rulings were wrong in both cases, judgment was to be entered for the plaintiff in each case for $2,000 and interest.

*W. H. Shea,* (*M. J. O'Leary* with him,) for the plaintiff.

*A. R. Tisdale,* for the defendant Boston and Maine Railroad.

*C. S. Knowles,* for the defendants Pike and others.

CROSBY, J. These are two actions of tort, tried together, to recover for personal injuries received by the plaintiff by falling from a building in process of construction on land of the first named defendant. At the close of the evidence for the plaintiff, the presiding judge directed a verdict for the defendant in each case and reported the cases to this court with a stipulation as to damages.

The first named defendant entered into written contracts with different contractors for the erection of the building; the contract for the steel framework was made with the McClintic, Marshall Company, by whom the plaintiff was employed; and the contract for the masonry and carpenter work was made with the defend-

ants in the second action, William N. Pike and Sons, (hereinafter called Pike and Sons). The building was about two hundred feet long and about one hundred and fifty feet wide, and lengthwise ran approximately north and south; the walls were of brick on a concrete foundation and were about twenty feet in height; the frame of the building consisted of seventy-five-foot steel girders, which rested on the outer and inner brick walls and upon steel columns and ran across the building about thirty feet apart; lengthwise of the building and bearing upon the girders were trusses, or steel beams called struts; on the struts were steel angle irons, to which were bolted wooden purlins or rafters extending crosswise, and upon which the roof boards were nailed; a brick wall running north and south through the centre divided the building into two sections,—that on the east side was known as the car machine shop and that on the west the car blacksmith shop.

The steel framework had been erected by the McClintic, Marshall Company several days before the accident which caused the plaintiff's injuries, and the roof on the westerly half of the building had been completed by Pike and Sons, but the easterly half of the building had been only partially finished by the company and the roof had not been built; the ends of the steel struts had been set in mortar into the brick wall of the south end, and rested on steel plates.

Sometime before April 21, 1913, (the date of the accident,) one Coffin, an assistant engineer and inspector for the railroad company, noticed that the truss at the south end of the car machine shop was out of alignment; and the chief engineer of the McClintic, Marshall Company was notified to straighten it. Coffin also ordered Pike and Sons to remove the brickwork around the ends of the struts so that the truss could be pulled into place, and to remove the bolts which fastened the purlins to the steel work; there was evidence that these bolts were removed before the accident but that previously the purlins had been bolted to the trusses; there also was evidence that it was not necessary to remove the bolts to straighten the truss. .

On the day of the accident the plaintiff and some other workmen under the direction of one Houston, foreman for the McClintic, Marshall Company, came to the building to straighten the truss. When they arrived they found a mason's ladder, which had been

placed by employees of Pike and Sons on the east side of the junction of the strut and truss, at the place where the truss was bent and on its southerly side. The plaintiff and one Coppenrath went up the ladder and fastened a guy wire around the top of the truss at the point of the bend and fastened the guy to clamps; then went down the ladder and attached the guy to the railroad track, under the direction of Houston; while so engaged the guy wire began to slip, and Houston inquired of one Caswell, a steel inspector for the railroad company, where they could get some spikes to nail a plank to the ties to prevent the guy from slipping, and Caswell replied: "There is lots of them up on the roof." Houston then ordered the plaintiff to go up on the roof and get the spikes. The latter testified that he went up the ladder and after getting the spikes came back to go down the ladder and walked along a strut, that he saw a purlin standing on edge, the bottom of which was about twenty-four inches above the top of the ladder; that he saw the bolt head on the wood side; "that he put his two hands on the purlins to step on the ladder; that when he took his feet off the I-beam truss to step on the ladder, it [the purlin] turned down on him and threw him out of his balance to the ground."

The plaintiff contends that the purlin which he took hold of to steady himself was on edge, close to the steel column, and that the bolt was left in it; and that for these reasons he was led to believe that it was bolted in place, that it was safe for him to take hold of it, and that it was negligence on the part of the defendants to leave it in that position under the circumstances.

We will first consider the case against the railroad company. There is no evidence that this defendant had anything whatever to do with the erection of the building, other than to supervise the construction for the purpose of seeing that the work was done in conformity with the contract and in accordance with the drawings and specifications; the contract provided that the work should be done under the direction and control and to the satisfaction of the chief engineer of the railroad, whose decision as to the true construction and meaning of the drawings and specifications should be final. The work of straightening the truss was not being done by the railroad company and it had no control or direction as to the manner of its performance; the only connec-

tion the company had with that work was to see that it, in common with all other construction, was performed in accordance with the terms of the contract.

The reply made by Caswell, the defendant's inspector, in reply to the inquiry made by Houston, the McClintic, Marshall Company's foreman, as to where spikes could be obtained, had no tendency to show that the railroad company was in any way engaged in the work being done when the plaintiff was hurt. It follows that there was no evidence that the defendant railroad failed in any duty which it owed to the plaintiff or that his injuries were due to its negligence.

While the ladder was placed where it was found, by employees of Pike and Sons, the evidence would not warrant a finding that the plaintiff was invited to use it; there were other ways of reaching the roof, and there is nothing to show that the ladder was placed there for the use of the employees of McClintic, Marshall Company. Accordingly the plaintiff did not use it by invitation of Pike and Sons; but in using the ladder as to that company he was merely a licensee. *Blackstone* v. *Chelmsford Foundry Co.* 170 Mass. 321. *Cole* v. *L. D. Willcutt & Sons Co.* 214 Mass. 453.

Nor was the evidence that the purlin was unbolted and stood on edge close to the steel column with the bolt left in it evidence of negligence of Pike and Sons. The building was in process of construction and in an unfinished state; the plaintiff testified, and there was other evidence, that at the time of the accident in different parts of the building some of the purlins were on edge as they would be when bolted in position, while others were lying flat on the struts, some of which he walked over in passing along between the ground and the roof. In view of these obvious conditions, even if the plaintiff knew that previously all the purlins had been bolted to the steel work, still a finding of negligence on the part of Pike and Sons would not have been warranted.

The plaintiff was an experienced structural iron worker, he knew that it was necessary while working in a place high above the ground to be careful; he testified that while acting as foreman for the Boston Elevated Railway Company he had cautioned men working under him in high places to look out and be careful. Under the obvious conditions which surrounded him, in-

cluding the fact that some of the purlins were lying flat, while others were on edge, the plaintiff was not entitled to assume that the one he took hold of was fastened; the danger of injury from such a cause was one of the risks of the work in which he was engaged, and as to which the defendant Pike and Sons owed him no duty. The risk of injury was not due to a permanently unsafe condition of the building, but was temporary and transitory, which the defendant ought not reasonably to be held to have anticipated and guarded against. *Noonan* v. *Foley*, 217 Mass. 566. *Coyne* v. *Byrne*, 214 Mass. 221. *Gainey* v. *Peabody*, 213 Mass. 229. *Gillette* v. *General Electric Co.* 187 Mass. 1. *Kanz* v. *Page*, 168 Mass. 217. *Whittaker* v. *Bent*, 167 Mass. 588.

We cannot agree with the plaintiff's contention that the condition of the purlin was in the nature of a trap. The case at bar is plainly distinguishable from *Riley* v. *Lissner*, 160 Mass. 330, *Galli* v. *Drapeau*, 216 Mass. 144, but is governed by *Young* v. *Miller*, 167 Mass. 224, *Beique* v. *Hosmer*, 169 Mass. 541, *Boisvert* v. *Ward*, 199 Mass. 594, *Murdock* v. *Paine Furniture Co.* 211 Mass. 97, *Gainey* v. *Peabody, supra.*

As we are of opinion that there was no evidence to warrant a finding of negligence on the part of either defendant, we need not consider the conduct of the plaintiff. The exceptions which have not been argued are treated as waived; the others, for the reasons above stated, are overruled. In accordance with the terms of the report, the entry in each case must be

*Verdict to stand.*