VESS *v.* UNITED BENEVOLENT SOCIETY OF AMERICA.

CANDLER, J. This was an action to recover benefits under a policy of insurance which provided for the payment of such benefits in the event the insured should "receive personal bodily injuries, of which there shall be visible signs, effected solely through external, violent, and accidental means, by reason of which . . he shall be immediately, wholly, and continuously disabled, so as to cause a total loss of time and prevent him during such disability from attending to or performing all of the duties pertaining to his occupation." It appeared from the evidence that when the plaintiff was injured he was not "immediately . . disabled, so as to cause a total loss of time," but that a period of twenty-four days elapsed from the time of the injury until the plaintiff was first confined to his bed, and that during that period the plaintiff was continuously at his place of business, though not performing the duties usually assigned to him. *Held*, that the plaintiff's own evidence failed to bring his case within the terms of the contract of insurance, and that the grant of a nonsuit was proper. *Williams* v. *Preferred Assn.*, 91 *Ga.* 698. *Judgment affirmed. All the Justices concur.*

Submitted May 21,—Decided June 9, 1904.

Action on insurance policy. Before Judge Cobb. City court of Athens. November 16, 1903.

The plaintiff testified that his injury was such that from the date of the accident he could not and did not proceed regularly and in due course with his occupation as a salesman, and could not and did not go on with his usual work as if he had received no injury. On December 3, 1902, he was hanging framed pictures over the dress-goods counter at his place of business, in the discharge of his duties as a salesman, when one of them fell, the corner of it striking the top and back of his left hand, causing a

breaking of the skin and a considerable bruise.    Inflammation immediately set up, he suffered pain immediately, and it became worse daily until December 9, 1902, at which time it was much inflamed, very red and painful, and the inflammation began to extend up the arm; blood poison set up from the wound, and abscesses formed on the arm, one of which had to be and was opened, the cut being about two inches long.    The abscess was due directly to the blood poison.    For three weeks the abscess was packed, the bone being exposed.    The wound remained unhealed and caused pain and suffering from the day it was received until on or about February 22, 1903.    Immediately on being hurt he dressed and washed the wound and applied a salve.    On December 4 or 5 he consulted a physician, who treated him for it, and from the morning of the 9th the physician treated him daily. From the 9th his hand was so bandaged that it was impossible for him to have the use of it, even if the wound had permitted, but the soreness and inflammation would not have permitted its use even if the bandages had not been on.    From two hours after the time he was hurt he was partially disabled from attending to his usual business as salesman.    When he was first hurt the injury was apparently slight, and he did not think it serious.    He went on with his work as best he could, using the injured arm with light work, until December 9.    After that date he could not use the arm at all in handling the goods, but he could and did negotiate sales of goods, and gave such directions to his department as his condition permitted, "when he took his bed."    The abscess was opened about the 27th, and he left the store on that date. Before he was hurt he had an assistant; after he was hurt and could not use his arm except in light work, his assistant would handle heavy goods for him.    Up to the 9th the hand could only be used in very light service; and after the 9th, by reason of the inflammation and pain, he abandoned the use of it totally.    After that date and up to the 27th the only work he did was to use his right hand in pricing and explaining the merits of different merchandise; and, after the sale was made, he would get some fellow-salesman to handle, measure, fold, and see that the goods were made ready for delivery.    His duties were those of stock-keeper in the dress-goods, silks, and wash-goods department, and general salesman throughout the house, to handle all classes of goods

whether light or heavy. From the afternoon on which he was hurt he was debarred from handling the goods, as handling them and putting up the stock proved irritating to the wound. He turned over to his assistant the special management of the work under his direction when present, and with his assistance in his work, from the day he was hurt. Although he went to the store daily until the 27th, he did not regularly remain there all day.

*C. H. Brand*, for plaintiff, cited *Williams* v. *Preferred Asso.*, 91 *Ga.* 698; Young v. Travelers' Ins. Co., 80 Me. 244; Wolcott v. United Ins. Asso., 55 Hun, 98; Sawyer v. U. S. Casualty Co. (Mass.), 8 Am. L. Reg. N. S. 233; Sheanon v. Pac. Mut. Ins. Co., 77 Wis. 618 (20 Am. St. R. 151); Lord v. Am. Mut. Acc. Asso., 89 Wis. 19 (46 Am. St. R. 815); 1 Am. & Eng. Enc. L. (2d ed.) 296–7; *Thornton* v. *Trav. Ins. Co.*, 116 *Ga.* 126; Civil Code, §§ 5347, 4995.

*G. C. Thomas*, for defendant.