## Continental Casualty Company v. Matthis.

(Decided November 8, 1912.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Insurance, Accident—Action Upon Policy—Notice—Incapacity of Insured to Give Notice.—Where an accident policy required notice to be given of an injury within fifteen days from the date of the accident, the mental incapacity of the insured the last nine days avoided the effect of the failure to give the notice during the lucid days. (Maryland Casualty Co. v. Burns, 149 Ky. 550.)

2.  Same—When Notice Not Necessary—Waiver of Notice.—While
the insured was irrational, the company denied liability under
the policy, and after that denial notice was not necessary. A
denial of liability is a waiver of notice.

3.  Same—Disability of Insured—Partial Activity—Continuity of Ac-
cident.—When insured, incited by his desire to be at work, was
permitted by his physician to go, under caution, to his work,
and after three days, again went to bed for months of illness, it
cannot be said that these three days of partial activity, while
blood poisoning was developing, broke the immediacy and con-
tinuity of the accident.

SHIELDS & CAMPBELL, CAMDEN R. McATEE, MANTON
MAVERICK and M. P. CORNELIUS for appellant.

L. A. HICKMAN, H. J. GRAHAM for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

On January 24, 1911, appellant issued to appellee an
accident policy covering an indemnity of $40 per month
for total disability resulting from accident. On Jan-
uary 27, the insured scratched his thumb on a carpet
tack, from which blood poison developed. He sued the
company for the indemnity, and from a judgment in his
favor the company appeals.

The company claims that the petition is not good.
It was not until the amended petition was filed upon the
trial. With that amendment in, the plaintiff's pleadings
substantially charged the issual of the policy for a
valuable consideration, the accidental injury, his total
disability, the treatment by a physician, that during the
entire time of his injury he was in such mental and
physical condition as that he could not give the com-
pany the contract notice of the injury, and that mean-
time the company had waived notice by denying liability
under the policy. A cause of action was stated. The
policy was filed with the petition.

The policy demanded that written notice be given of
an injury within fifteen days from the date of the ac-
cident. It was not given. The proof shows that from
the third to the sixth day after the accident the insured,
though the disease was upon him, had mental and physi-
cal capacity to give the notice; but that after the sixth
day, and until long after March 15 (see post), he was
dangerously ill and delirious practically all the time.
We held in Maryland Casualty Co. v. Burns, 149 Ky.,
550, that such a condition excused the giving of the no-

tice during its existence, saying that the insured "should give the contract notice, unless his faculties be so impaired or he be so circumstanced that the giving of such notice is imposible." But the company urges that his failure to give the notice during the three lucid days, from the third to the sixth day after the accident, was fatal to his claim. No so; for he had by contract fifteen days in which to act. During the last nine of them he was irrational, and continued so for many days. He had as much right to these nine days as he had to the first six; and his incapacity, under the case supra, avoided the effect of his failure to give the notice. The company's construction would require the contract to read that the insured must anticipate his coming delirium, and give the notice at a time far short of the contract period of fifteen days, a construction which would demand the impossible. On March 15, and while the insured was still not at himself, the company denied liability under the policy. After that denial no notice was necessary. A denial of liability is a waiver of notice. The same denial of liability also avoided the necessity of giving the formal proofs of loss demanded by the policy. Standard Life & Accident Insurance Co. v. Thomas, 17 S. W., 275.

The company urges, however, that it never denied liability. The father of the insured testifies that on March 15 he presented the policy at the company's Louisville office, desiring to know what the benefits were; that the agent in charge told him that he had advised the company that the insured's trouble was blood poison; that the agent, when payment was demanded, didn't make payment, claiming that blood poison was a sickness, and not an accident; that on the last of March he went to the office and paid a premium on the policy to the agent's wife who was in charge; that she gave him a receipt; that on April 1st he took the assured's book and this receipt back to the office to have it entered on the book; and that when he handed her the receipt for this purpose, she tore it up; that she gave him back the money, and when he tendered it again to her she declined to take it. Mr. E. B. Patterson, an attorney who went along with the elder Mathis, testifies that she said the policy had been canceled. The jury was properly instructed on the question of a denial of liability by the company. Upon the foregoing evidence it was justified in its finding that liability had been denied. Kenton In-

surance Co. v. Wiggington, 89 Ky., 330; National Fire Insurance Co. v. United States B. & L. Association, 54 S. W., 714.

The company complains that certain matters of its defense, such as the failure to give the notice, and the like, were striken out on demurrer. Such of them as it was entitled to take to the jury were submitted under the general issue, where they were properly tried. The company suffered nothing in this respect.

The policy provided indemnity for total disability caused "at once and continuously" after the accident. Because the insured was not totally disabled during the three days named the appellant says that he was not continuously disabled, and that it is therefore not liable. It relies upon a dictum in General Accident & Life Assurance Corporation v. Meredith, 141 Ky., 92. In that case a physician after suffering an accident made a couple of professional calls. Later he died from the accident. The action was brought for the death. In discussing the question there made the court said, obiter, that if the suit had been to recover the monthly disability, the facts shown would preclude a recovery "for total accident disability"—doubtless upon the sound general idea that one who regularly goes about his customary business is not totally disabled. But that abstract statement, like most abstract statements, has its variations. In Commercial Travelers v. Barnes, 72 Kan., 392, it was held, consistent with sound reason, that "immediately" was not synonymous with "instantly," and that so to define it would deprive a beneficiary of all rights or indemnity unless the hurt, the prime cause of the injury, was followed by immediate disablement. The court illustrated its position by an accidental poisoning. It said that such interim of time after the taking of the poison as the processes of nature might consume in bringing the poisoned person to a state of disability must be excluded in determining the meaning of immediately. In Brendon v. Traders & Travelers Accident Co., 84 N. Y. App. Div., 530, it was held that a physician was "immediately, continuously and wholly" disabled by an accident notwithstanding he paid a professional visit meantime. In Hohn v. Interstate Casualty Co., 115 Mich., 79, it was held that a barber who went to his shop several days after the accident, suffering pain the while, and then was obliged to take to his bed on the eighth day, was "immediately,

continuously and wholly disabled.'' There are cases from other jurisdictions to the same effect; and there are cases contra. We think those we have cited are sound. In the case at bar the assured was wholly disabled for three days. Then, incited by his desire to be at his work, he was permitted by his physician to go, under caution as to prudence and care. He did not and could not do all his work, and after three days of it, again went to bed for months of illness. During all the time he had blood poison. The processes of nature were at work within his body begetting the sure and certain result of the accident, as the infection had at once happened. To hold that these three days of partial activity, while the poison was developing, broke the immediacy or the continuity of the accident, would be to hold that an accident policy does not cover blood poisoning from accident; for always there must be the interim of time for the disease to incubate. The provision in the policy is to have a natural and reasonable interpretation. The technical position of the company would avoid the policy for about every purpose save the collection of premiums. Within the intent of the policy, sound reason, and the opinions supra, the insured suffered an immediate and continuous disability.

Notwithstanding the fact that the blood poison resulted from the accident, the company contends that the disability resulted from illness, not accident—the precise position upon which the elder Matthis says the agent refused payment. The issue of accident was submitted to the jury aptly. Further, it is to be noted that the policy in express terms provides that peritonitis, carbuncles, ulcers, and certain other denominated ills, are illnesses within the terms of the policy, no matter what may have brought them on. Blood poison is not among them. If the company so desired to classify this common resultant from accident it should have done so with equal express care. In accident insurance jurisprudence, blood poison resulting from accident is regarded as a part of the accident, and an injury or death from it, as an accidental injury or death. It was so held in Omberg v. United States Mutual Accident Association, 101 Ky., 303, where it was said that the company's position would avoid liability, to illustrate, if the insured should die from blood poisoning resulting immediately from a gunshot wound—''a conclusion wholly at

war with the manifest purpose of the contract." See also Cary v. Preferred Accident Insurance Company, 127 Wis., 67, s. c., 5 L. R. A. (N. S.), 926, and extended case note, and Central Accident Insurance Co. v. Rembe, 220 Ill., 151.

Lastly, it is objected that the action was brought within three months from the time for filing proofs of loss, in violation of an express provision contra in the policy. Denial of liability is a waiver of such a provision. Aetna Life Insurance Co. v. Howell, 107 S. W., 294.

The foregoing objections were urged by demurrer, by a motion for a peremptory instruction, and a motion for a judgment non obstante veredicto. The insured was in intense pain for months, delirious much of the time. Tubes were kept in different parts of his body for long periods to drain away the pus and poison. Even upon his recovery he was afflicted as if he had locomotor ataxia. That he recovered at all is considered by his physicians as little short of the miraculous. His troubles were the direct result of an accident, against which the company had insured him. The trial was fair. The judgment is affirmed.