JOSEPH W. ROBINSON *v.* MASONIC PROTECTIVE ASSOCIATION.

May Term, 1913.

Present:  ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 13, 1913.

*Accident Insurance—Cause of Injury—"Wound"—"External and Visible Marks of Wound"—Total Disability.*

In an action on an accident insurance policy, evidence *held* to show that a felon on insured's finger was the natural consequence, without any intervening cause, of a bruise received 24 hours before.

The word "wound," as used in an accident policy insuring against injuries leaving "external and visible marks of wounds," is to be given its legal meaning as any lesion of the body, including bruises, contusions, fractures, dislocations, and the like, rather than its surgical meaning as a solution of continuity.

A felon on the insured's finger, which is the direct and natural consequence of an accidental bruise, is covered by an accident insurance

policy, insuring against accidental injuries from external causes leaving "external and visible marks of wounds."

Where the insured accidentally bruised his finger and the next day, but within 24 hours, a felon developed thereon, which totally disabled him, he is not precluded from recovering on the accident insurance policy because it provides that the injury must create total disability from the date of the accident, as that means total disability within 24 hours after the accident.

ASSUMPSIT on an accident insurance policy. Plea, the general issue. Trial by jury at the September Term, 1912, Chittenden County, *Taylor,* J., presiding. Verdict directed for the defendant, and judgment thereon. The plaintiff excepted.

Plaintiff claimed to recover for total disability, and only under clause "B" of the policy, which is as follows:

"In case of accidental injuries which shall result from violent, external and involuntary causes, shall leave external and visible marks of wounds, fracture, or dislocation upon the body of the insured, and shall not cause his death within ninety days, but shall totally disable him from the date of the accident, and for not less than the next seven days, the sum of twenty dollars per week during such total disability, * * *." At the close of all the evidence the court granted defendant's motion for a directed verdict, holding that plaintiff could not recover under the quoted clause of the policy because it appeared that the injury did not leave an external and visible mark of a wound, fracture, or dislocation.

The evidence tended to show that in the forenoon of July 8, 1911, plaintiff's finger began to swell and became painful, and steadily grew worse and a frog felon of the severest kind developed, which totally disabled plaintiff until September 16, 1911. It appeared that on July 7, 1911, plaintiff was working as road commissioner with men and teams drawing gravel and replacing fallen stones in the abutment of a bridge; that in the afternoon of that day he used an iron bar in helping to replace those stones, and thereafter did no manual labor up to the time in the forenoon of the next day when, as the evidence tended to show, his finger began to swell and became painful. The exceptions state that "plaintiff could not tell when or that he received an injury to his finger." The physician who examined plaintiff's finger in the afternoon of July 8 testified that it was

then badly swollen, inflamed and reddened, but that he noticed no abrasion of the skin; that he then called it a felon, "the most severe type of felon"; that a felon is generally due to an injury; that an injury "most invariably" produces a felon, which he would expect to develop "immediately, soon after, within a day or two." The physician who operated on the finger about a week after the felon appeared testified that in his opinion the felon was the direct and immediate consequence of "some bruise or injury of some sort to the finger"; and that in his opinion a felon never occurs without an injury. He further testified as follows:

"Q. In your judgment, could a person receiving an injury or a jam that within twelve hours would produce such a condition as this man had, and he not know it at the time he received it? A. Yes, sir, I think so.

Q. What sort of injury would that be? A. Well, he might have got his finger pinched between a couple of stones, or hurt it on the handle of a shovel or crowbar without being conscious of it at the time it happened.

Q. And still within 10 or 12 hours be in the condition the finger was, swollen and painful so that he could not sleep? A. Yes, sir."

*Cowles & Stearns* for the plaintiff.

The requirement of the policy that the injury "shall leave external and visible marks of wounds" means only that there shall be on the body of the insured some external and visible evidence that the disablement was accidental. *Thayer* v. *Standard etc. Ins. Co.*, 68 N. H. 577, 41 Atl. 182; *Pennington* v. *Pacific Mut. etc. Co.*, 85 Iowa 468, 52 N. W. 482, 39 Am. St. Rep. 306; *Gale* v. *Mutual Aid etc. Ass'n*, 66 Hun. 600, 21 N. Y. Suppl. 893.

The felon was not a mere sickness, but the direct result of an accident. *Farner* v. *Mass. Mut. Acc. Ass'n*, 219 Pa. 71, 67 Atl. 927; *Acc. Ins. Co.* v. *Young*, 20 Can. S. C. 230; *Miner* v. *Travelers Ins. Co.*, 3 Ohio Dec. 289, 2 Ohio N. P. 103; *Travelers Ins. Co.* v. *Murray*, 16 Colo. 296; *Fitton* v. *Accidental Death Ins. Co.*, 17 C. B. N. S. 122, 34 N. J. C. P. 28; *Martin* v. *Equitable Acc. Ins. Ass'n*, 61 Hun. (N. Y.) 467; *Western Commercial*

*Travelers' Ass'n.* v. *Smith,* 85 Fed. 401, 56 U. S. App. 393, 29 C. C. A. 233, 40 L. R. A. 653.

*Rufus E. Brown* and *Sherman R. Moulton* for the defendant.

Plaintiff cannot recover because the alleged injury left no visible mark of a "wound," within the meaning of the policy. *Montgomery* v. *Electric Railway Co.,* 103 Mich. 46, 61 N. W. 543, 29 L. R. A. 287; *Shaddock* v. *Plank Road Co.,* 79 Mich. 7, 44 N. W. 158; *Moriarty* v. *Brooks,* 6 Carr. & P. 685; *Thompson* v. *Loyal Protective Asso.,* 132 N. W. 554; *Lewis* v. *Brotherhood Society,* 194 Mass. 11, 79 N. E. 802, 17 L. R. A. (N. S.) 714.

WATSON, J.   The plaintiff cannot recover under Clause B of the policy, unless the felon on his finger was due to an accidental injury resulting from some violent, external and involuntary cause, leaving external and visible marks of a wound upon the finger, which totally disabled him from the date of the accident. He could not tell when nor that he received an injury to the finger upon which the felon appeared. But there was evidence tending to show that on July 7, 1911, he was working as road commissioner with men and teams drawing gravel and replacing fallen stones in the abutment of a bridge, and that after dinner of that day he helped his men in replacing such stones, using an iron crowbar. He did no manual labor after thus helping to replace the stones, up to the time in the forenoon of the next day when, according to the tendency of the evidence, his finger began to swell and became painful. The physician who examined the plaintiff's finger in the afternoon of the latter day did not notice any abrasion of the skin. The finger was badly swollen, inflamed and reddened. It grew worse steadily, and a frog felon of the most severe kind developed.

We think the evidence fairly and reasonably tended to show that the felon resulted from, and was the natural consequence of, a bruise of the finger within less than twenty-four hours from the time of the injury, without any intervening cause. That it was an accidental injury if such a bruise was received by the plaintiff, no question is made.

Did the felon constitute an external and visible mark of wound, within the meaning of clause B of the policy? The

word "wound" is defined in Bouvier's Law Dictionary as fol-
lows: "Any lesion of the body. In this it differs from the
meaning of the word when used in surgery. The latter only re-
fers to a solution of continuity; while the former comprises not
only these, but also every other kind of accident, such as bruises,
contusions, fractures, dislocations, and the like." The defini-
tion given by Rapalje and Lawrence in their Law Dictionary,
is exactly to the same effect, making the same distinction. And
in Stewart's Legal Medicine, a book published in 1910, section
100, the same distinction between the surgical and the legal
definitions is noticed. In *Thompson* v. *Loyal Protective Asso-
ciation*, 167 Mich. 31, 132 N. W. 554, the insurance certificate
was issued upon an application for membership, wherein it was
agreed that there could be no claim for indemnity "for any dis-
ability where there shall be no external or visible sign or symp-
tom of disease or bodily injury"; and bodily injury was defined
to include "only the result of external, violent and accidental
means, leaving on the body marks of contusion or wounds visible
to the naked eye." The insured was a "boiler house foreman"
and the evidence showed that the claimed injury was received
by him while working inside a boiler, cleaning it; that on get-
ting home he went immediately to bed, and on his right side,
between the hip and the back there was a red, inflamed mark,
about half the size of his wife's hand; that the next day he was
suffering much pain, and on examination the physician found a
discoloration of the skin, swelling and redness over the right
kidney and hip. The physician testified that this injury caused
the insured's death which occurred five days later; and that the
death was wholly due to the external injury. It was claimed
that the charge, shown in the third paragraph, was erroneous
wherein the court said, "The mark visible to the eye on the body
required by the policy need not be a bruise, contusion, lacera-
tion, or broken limb, but may be any visible indication of an in-
ternal injury, which may appear within a reasonable time after
the injury is received, such for instance as a discoloration of the
part of the body affected." The court said this part of the
charge must be read in connection with the sentence immedi-
ately following it: "In legal medicine the word 'wounds' means
injuries of every description that affect either the hard or soft
parts of the body, and comprehends bruises, contusions, frac-
tures, luxations, etc. In law the word means any lesion of the

body." Thereon the court of last resort further said the jury had been charged explicitly, in substance, that it must appear that the death was caused, exclusively of other causes, "by a bodily injury sustained through external violence and accidental means, leaving upon the body marks of contusion, or wounds, visible to the naked eye. The third paragraph excepted to explains and defines to the jury the meaning of the term 'visible mark' and the word 'wound,' as used in the insurance contract," and there was no error in such instruction.

We are of the opinion that the word "wounds" as used in clause B of the policy upon which the action before us is based, should be given the so-called legal, rather than the surgical, construction, and that it includes the bruise of the plaintiff's finger, if any there was, of which the felon was the direct and natural consequence; and that in such circumstances the felon constituted "external and visible marks" of the wound left upon the plaintiff's body by the accidental injury, within the meaning of that clause of the policy.

The claim that no recovery can be had under clause B, because the plaintiff's injury did not "totally disable him from the date of the accident," must also be determined against the defendant on the tendency of the evidence and the construction of the contract. As already seen, the evidence tended to show that the felon appeared within less than twenty-four hours from the time of the injury. It further tended to show that total disability resulted from the time of its appearance. The question then is, Was such disability within less than twenty-four hours after the time of the accident, though on the next calendar day, "from the date of the accident" within the meaning of that clause of the policy? A construction making the words "from the date of the accident" mean from the calendar day on which the accident occurred, would be so unreasonable in some cases as to render it almost certain that such a construction was not contemplated by the parties to the contract. For instance, the insured might meet with accidental injuries between eleven and twelve o'clock at night, it being within the last hour of the calendar day, and yet if that is the date contemplated by the policy, the total disability of the insured must begin within the same hour and perhaps instantly, in order to entitle him to the benefits provided by clause B. Assuming that this provision was inserted in the contract by the insurer with intentions rea-

sonable and just toward the insured, we think the words, "date of the accident" as used in that clause, were intended to mean total disability from the day of the accident, reckoned from the time of the accident, that is, within twenty-four hours thereafter.

*Judgment reversed and cause remanded.*