THOMAS O'BRIEN *vs.* WISE AND UPSON COMPANY, IN-CORPORATED, ET AL.

First Judicial District, Hartford, January Term, 1928.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued January 3d—decided September 28th, 1928.

*Cornelius J. Danaher,* for the appellant (plaintiff).

*DeLancey S. Pelgrift,* for the appellees (defendants).

BANKS, J. The plaintiff, who is a carpenter by trade, in getting down from a staging upon which he had been standing, got his foot entangled in a temporary supply pipe which ran to a radiator located near the staging, and wrenched his body. He continued at his work and worked for one week without incapacity. He then consulted a doctor, who found a right indirect in-

guinal hernia which, in his opinion, resulted from the wrenching received by the plaintiff as he was getting down from the staging. The commissioner found that the hernia resulted from an injury arising in the course of plaintiff's employment, but that he was not immediately incapacitated for work, and dismissed his claim for compensation. Section 5352 of the General Statutes, as amended by Chapter 307, §4, of the Public Acts of 1927, provides: "In order to be entitled to compensation for a hernia, the employee shall prove that the hernia resulted from an accidental injury, that inability to work immediately followed such accident, that there was not a pre-existing hernia at or prior to the accident for which compensation is claimed and that, within two weeks thereafter, the facts of such accident were communicated to the employer." The commissioner has not directly found that the plaintiff's hernia arose out of his employment, nor that the facts of the accident were reported to the employer within two weeks, though the former necessarily follows from the other facts found, and the latter may be covered by the finding that "the claimant has satisfied all the requirements of the statute except that he was not immediately incapacitated for work." The only question raised by the appeal from the finding of the commissioner and presented upon this reservation is whether the commissioner erred in holding that, because the plaintiff continued to work for a full week after the accident, his inability to work did not immediately follow the accident and he was not therefore entitled to compensation under the section of the statute above quoted.

Our answer to the question presented involves a construction of the statute and more particularly a determination of the precise meaning to be accorded to the word "immediately" as there used. The word "imme-

diately" may be used as an adverb of time, place or causation, and from its etymology signifies that there is nothing intervening either of time, space or cause, as the case may be. It is more frequently used as an adverb of time and would ordinarily be so construed unless the context indicates otherwise. In its strict significance as so used it excludes the lapse of any interval of time. As judicially construed, however, it is a word of relative significance, much in subjection to its grammatical connection, and used with more or less latitude according to the subject to which it is applied. *McLure* v. *Colclough,* 17 Ala. 89, 100; 4 Words & Phrases (1st Series) 3407. Where used in connection with human conduct, as in the case of a requirement that a certain thing shall be done immediately, it is generally held to require that the act shall be performed, not instantly, but without unreasonable delay having regard to the nature of the thing to be done. This is well illustrated in the construction given to the provision in an insurance policy that notice of the loss must be given immediately. The notice is sufficient if given within a reasonable time under the circumstances of the case. *Lockwood* v. *Middlesex Mutual Assur. Co.,* 47 Conn. 553, 568. Where, however, an event must follow another immediately and no human action is involved, no question of reasonable time in which to act can arise, since no action is to be taken. It is simply a question of sequence of events.

Such a situation is presented in the construction of a clause commonly appearing in policies of accident insurance which limits the liability of the company to those injuries which "independently of all other causes immediately, wholly and continuously disable" the insured. The word "immediately" in this clause has generally been construed as an adverb of time rather than causation. A majority of the decisions construing such

a clause have held that the disability need not follow instantly—that is, without any interval of time—but have disallowed a recovery under the policy unless the accident was followed by total disability without any substantial interval. "It is generally agreed that 'immediately' as so used does not mean instantaneously or without any interval of time; and is not, on the other hand, equivalent to the phrase 'within a reasonable time,' but requires that the disability shall result presently and without any substantial interval." 1 Corpus Juris, 468. "The word 'immediately' does not mean instantly, in the sense that a man shall be totally disabled from the very second of the accident which has caused the injury. A man might be unable to attend to his business from the very moment of the injury, or in another case he might not be disabled for a few minutes or a few hours after the injury. 'Immediately' means presently or without any substantial interval of time elapsing." Fuller on Accident & Employers' Liability Insurance, p. 70. In Kansas it has been held that in such cases disability is immediate when it follows directly from an accidental hurt within such time as the processes of nature consume in bringing the insured to a state of total incapacity. *Order of United Commercial Travelers* v. *Barnes,* 72 Kan. 293, 80 Pac. 1020, 82 id. 1099. In this case the injury arose from the swallowing of a pin and total disability followed after an interval of twelve days. This case was followed in *Erickson* v. *Order of United Commercial Travelers,* 103 Kan. 831, 176 Pac. 989, and *Rabin* v. *Central Business Men's Asso.,* 116 Kan. 280, 226 Pac. 764.

In the *Erickson* case, the accident happened in September and the disability did not result until the following February, and the court said: "It may be inferred from the testimony that the disability was

reached within the time that the processes of nature take to effect such a development." In some cases the question of whether the disability was both total and immediate has been left to the jury as one of fact. Except for the Kansas decisions the courts have pretty uniformly held that where the disability did not result for a matter of days after the accident there could be no recovery under such a clause in an accident policy. *Williams* v. *Preferred Mutual Acc. Asso.*, 91 Ga. 698, 17 S. E. 982; *Vess* v. *United Benevolent Soc.*, 120 Ga. 411, 47 S. E. 942; *Merrill* v. *Travelers Ins. Co.*, 91 Wis. 329, 64 N. W. 1039; *Pepper* v. *Order of United Commercial Travelers*, 113 Ky. 918, 69 S. W. 956; *Masonic Protective Asso.* v. *Farrar*, 73 Ind. App. 19, 126 N. E. 435; *Herwig* v. *Business Men's Acc. Asso.* (Mo. App.) 234 S. W. 853; *Letherer* v. *United States Health & Acc. Ins. Co.*, 145 Mich. 310, 108 N. W. 491; *Preferred Masonic Mutual Acc. Asso.* v. *Jones*, 60 Ill. App. 106; *Genoa* v. *Continental Casualty Co.*, 167 Ill. App. 413; *Hefner* v. *Fidelity & Casualty Co.*, 110 Tex. 596, 222 S. W. 966; *Mullins* v. *Masonic Protective Asso.*, 181 Mo. App. 394, 168 S. W. 843; *Leventhal* v. *Fidelity & Casualty Co.*, 9 Cal. App. 275, 98 Pac. 1075. See also, for a collection and analysis of the cases, notes in 24 A.L.R. 226; 37 A.L.R. 151; 41 A.L.R. 1376; Ann. Cas. 1914D, 380. When a statute gave an action for death by wrongful act only when the person injured died immediately, it was held that while "immediately" was more comprehensive and elastic than instantaneously, there could be no recovery where the death occurred about an hour after the injury. *Sawyer* v. *Perry*, 88 Me. 42, 33 Atl. 660. But the same court in a later case allowed a recovery where total unconsciousness followed immediately upon the accident and continued until death, though the latter did not occur

for seventy-five hours. *Perkins* v. *Oxford Paper Co.,* 104 Me. 109, 71 Atl. 476.

We have given somewhat extended consideration to the decisions construing this clause in accident policies, since they present a situation closely analogous to the one before us. In those cases, notwithstanding the' familiar rule that provisions of an insurance policy are to be construed most strongly against the insurer, which has inserted them in the policy for its own benefit, we have found the courts denying recovery unless the disability resulted without any substantial interval of time. Here, in considering a statute which is not to be construed in favor of either party, we are asked what the legislature meant when it said that in such cases the employee, in order to recover, must prove that inability to work immediately followed the accident. The language used is so singularly clear and unambiguous that it might well be said to fall within the rule that "it is not allowable to interpret what has no need of interpretation." *Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 Atl. 540; *McKay v. Fair Haven & W. R. Co.,* 75 Conn. 608, 610, 54 Atl. 923. The phrase "inability to work" is too clear to be misunderstood, and when it is said that the inability to work must immediately follow the accident, it is obvious that reference is had to an accident occurring in connection with the work upon which the employee is engaged, that the word "immediately" is used as an adverb of time, and that the meaning of the whole phrase is that the employee is unable to continue the work upon which he was engaged at the time of the accident—that the injury was such as to compel him to quit work at once. Surely that would be the ordinary and commonly accepted meaning of these words and there appears no reason to doubt that the General Assembly used them in that sense. The

context not only does not indicate otherwise, but conclusively shows that "immediately" is here used as an adverb of time rather than causation. As the latter, it would be unnecessary repetition, since the causal relation between the accident and the hernia is made necessary by the next preceding phrase of the amendment requiring proof that "the hernia resulted from an accidental injury." As an adverb of time, it could not, even if the context otherwise permitted, be held to be the equivalent of "within a reasonable time," since it does not refer to anything done voluntarily by human agency where delay may be excused by reason of the circumstances of the case.

Furthermore, this construction of the statute effectuates the apparent intent and purpose of the legislature in its enactment. The ordinary type of indirect inguinal hernia is held by many surgeons to be the result of a congenital or prenatal weakness. Eventually some strain or effort, which may not itself be severe, causes the protrusion of the intestine through the defective structure, resulting in what is known as "the hernia of effort." Since the employer of labor takes his workman as he finds him, and compensation is not made to depend upon his freedom from liability to injury through a constitutional weakness, this form of hernia is compensable. *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 543, 97 Atl. 1020. Owing to the nature of hernia, and its onset, it was difficult for the employer to defend against claims of this character based upon a history of lifting or straining, perhaps months before, of which he had no notice but which would be assigned as the producing cause of the hernia. To meet this situation and to prevent the allowance of claims which were felt to be unjustifiable, special provisions with regard to recovery in the case of hernia have been adopted in the compensation laws of some

twenty or more States. It is clearly the purpose of our own Act, which follows rather closely the form of those adopted in many other States, to restrict compensation for hernia to those cases where the hernia follows immediately and directly from an accident occurring in the course of the employment with timely notice thereof to the employer. It does not confine compensation to cases of true traumatic hernia, which are so rare as to be negligible, but does require proof that the usual form of hernia—the hernia of effort—was caused by a strain or other accident which produced an immediate inability to work and that the facts of such accident were communicated to the employer within two weeks thereafter.

It has been suggested that it is sufficient if the disability result within two weeks, the period within which notice must be given to the employer of the accident causing the hernia. Not only would that be quite foreign to any meaning which has ever been given to the word "immediately," which is never used to designate an exact period of time, but if that had been the intention of the legislature it would almost certainly have definitely fixed the two-weeks period here as it has done in the case of notice to the employer. Unless the word means, as has so generally been held in the accident insurance cases, "without a substantial interval of time," it can only be held to mean that the disability must follow within such time as the processes of nature consume in bringing about disability as a result of the injury. Such a construction would result in fixing the date of the disability in terms of causation rather than of time. It would mean that the disability—no matter how long after the accident it resulted—immediately followed it, if only it was within such period of time that the accident could have been the cause of the disability, thus reaching the

result of one of the Kansas cases, *Erickson* v. *Order of United Commercial Travelers, supra,* that a disability was immediate which did not result until five months after the accident. This is the very result that it was the purpose of the amendment to prevent. Prior to the amendment, hernia was compensable only if it was caused by an accident arising in the course of and out of the employment. This clause of the amendment requires, in addition to proof of the cause of the hernia, proof that inability to work resulted immediately. If that means no more than proof that disability resulted when it would result, according to the processes of nature, if the hernia was the result of the accident, it leads to a result which not only may be quite inconsistent with the connotation of the word "immediate" when used in such a connection, but which quite obviously fails to accomplish the apparent purpose and intent of the legislature in the adoption of this amendment to the Compensation Act. A common provision in the compensation laws of other States is one requiring proof that the hernia immediately followed the injury. A diligent search of the decisions of those States fails to disclose any case in which the claim has been made that "immediately" was there used as an adverb of causation or, if an adverb of time, in the sense of "within a reasonable time." It is said that a hernia resulting from a strain or wrench rarely produces immediate inability to work and that the statute thus construed will exclude from compensation the majority of herniæ of this class. If this were a matter of which we could take judicial notice, we would find surgical authority holding that a hernia which was actually caused by a strain is ordinarily accompanied by pain and immediate inability to proceed with the work that was being done. Be that as it may, we would not be at liberty to disregard the plain meaning of the

language of the statute because it leads to a result which might seem undesirable. Questions as to what cases of hernia, or whether hernia in any case, shall be compensable, are questions for the legislature. It has said that hernia shall not be compensable unless it results from an accidental injury and that inability to work immediately follows the accident. It is not within our province to wrest this language from its plain meaning in order to provide a more liberal rule of compensation in such cases than that which the legislature in its wisdom has seen fit to adopt.

An employee who continues his work without incapacity for a week after an accidental injury is not entitled to compensation for a hernia claimed to have been caused by such injury, since inability to work did not immediately follow the accident.

The Superior Court is advised to render its judgment dismissing the appeal and confirming the finding of the commissioner.

In this opinion MALTBIE and HINMAN, Js., concurred.

WHEELER, C. J. (dissenting). Until the amendment in the Public Acts of 1927, Chapter 307, §4, the injury hernia was compensable in the same manner and upon the same conditions as any other injury. Prior to this Act, as now, cases of hernia had to be proven to have arisen out of and in the course of the employment of the employee. As we have interpreted and applied these terms that burden was a heavy one upon the employee, but a just one, and a very effective protection against unjust claims. Neither the commissioners nor the Superior Court judges have been subject to criticism for too readily accepting the employees' claim as to the occurrence which produced the hernia. The entire administration of this law has

exhibited the fairness and good judgment of the officials charged with this difficult duty. It is, however, a fact that owing to the nature of the injury hernia, and its onset, it was difficult for the employer to defend against claims of this character because of the time elapsing between the injury and the notice given him of it. True, the notice had to be given forthwith, but this meant in our law, within a reasonable time, and on the failure to give the notice the commissioner might make an award reducing it proportionately to any prejudice sustained by the employer. The amendment provides that the notice of this injury should be given within two weeks of the accident. Herniæ, prior to the amendment, were compensable whether arising from accident, disease or otherwise, and an evident purpose of this amendment was to limit recovery to cases arising out of accident, and to exclude cases of herniæ where the claimant had had a pre-existing hernia. It would seem that the rights of employers under these provisions would be amply protected against unjust claims. Certain it is that no other form of injury which is compensable under our Act is restricted to so great a degree as the injury resulting in a hernia when subjected to these conditions.

The amendment adds one more condition required to be proved by the employee before he can recover, viz., "that inability to work immediately followed such accident." The proper construction to be given to this language constitutes the basis of this appeal. The opinion of my associates does not expressly construe the term "inability to work," but says its meaning is too plain to be misunderstood. But it subsequently says "that the meaning of the whole phrase [inability to work immediately followed such accident] is that the employee is unable to continue the work upon which he was engaged at the time of the accident—that the

injury was such as to compel the employee to quit work at once." Under this construction inability to work can only mean a complete inability (that is, a complete incapacity) to work at the vocation the employee was pursuing. As a consequence of the construction accorded this language, the claimant carpenter is denied the recovery of an honest claim for an honest hernia because he continued at his work for a week after the strain which then resulted in the hernia. Counsel for the employer and the insured in his brief says: "Considered . . . from a physiological viewpoint a hernia . . . by an accident does not necessarily cause an instantaneous prostration and would not in some cases cause any inability to work. Considering, however, the evident intent and purpose of the legislature from the text of the amendment itself, we believe it apparent that only such herniæ as cause instantaneous disability are compensable." "The provisions," he continues, "may seem drastic and too severe in certain cases." This understates the situation which must result. The limitation of this condition to cases of instantaneous prostration necessarily excludes all but a comparatively small number of herniæ injuries, for total incapacity does not usually follow in most herniæ injuries. If this language limits recovery to cases of instantaneous prostration, then the denial of compensation to this claimant is the necessary conclusion.

It is well to have before us the facts found by the commissioner. The hernia suffered by this claimant did arise out of and in the course of his employment; he did not have a pre-existing hernia, and he did give the required notice within the two weeks. The representative of the insurer and employer candidly states that which is obvious, that the restriction of compensable herniæ to those where the total incapacity is instantaneous is too drastic and severe in some cases.

The commissioner, who denied compensation, said: "It is unfortunate that an honest claimant such as this man, who undoubtedly did sustain the hernia from his work, should not receive compensation." The amendment so construed overthrows the primary purpose behind our own and every other Compensation Act. It would exclude from the benefit of the Act injuries which arose out of and in the course of the employment. Yet we held in *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 146, 93 Atl. 245: Our Act "accepts, as an inevitable condition of industry, the happening of accident, and charges its cost to the industry. It imposes upon an employer, presumably, his share of a common loss in a common industry." The injury to this claimant was one of the very injuries for the compensation of which our Compensation Act was enacted. We should not assume, unless the construction of this condition plainly compels it, that the General Assembly intended to exclude such herniæ injuries from our Act. Traumatic herniæ are the result of a direct blow or force and so infrequent, my associates say correctly, as to be negligible. These are not the herniæ with which this Act is principally concerned. No one has claimed that only traumatic herniæ are intended by the language of this condition. Obviously it refers, and was intended to refer, to that large class of herniæ, often caused by a strain or wrench, and which my associates denominate as the "hernia of effort." Herniæ of this class rarely produce total incapacity, that is, instantaneous prostration, or the instantaneous incapacity to work, or the incapacity to work "presently or without any substantial interval of time elapsing." Many adjudicated cases are found where the incapacity from the hernia did not result instantaneously, or "presently or without any substantial interval of time elapsing." If the construction adopted by my

associates obtains, the majority of herniæ of this class will be excluded from compensation.

The amendment contemplates compensation for herniæ through accident, yet the construction reached in the majority opinion holds that the General Assembly intended to enact a statute which gave the appearance of granting compensation for accidental herniæ, but, in effect, denied compensation for most herniæ injuries of this class. With this construction we have an amendment whose provisions, it is admitted, were agreed to by the representatives of both the employer and the employee, which intentionally excluded from the Act the large majority of cases of herniæ of effort which arose out of and in the course of the employment. Honest claims for herniæ are taken out of the Act, while the legislature leaves in the Act injuries resulting from a strain of the back, or side, or shoulder, whose injurious consequences may develop within a week or a month of the occurrence which caused the strain.

I am unwilling to believe that the employers intended to impose upon their employees a piece of legislation which purported to give compensation for injuries resulting in hernia, but in fact excluded from its benefits the larger number of the "herniæ of effort." I am unwilling to believe that they intended to exclude all "herniæ of effort" except those cases where complete inability to work immediately followed the accident. Nor am I ready to believe that the representative of the employees could intentionally and understandingly have agreed to a provision which by its terms would deprive of compensation, thereafter, most employees who might subsequently suffer a hernia injury which arose out of and in the course of their employment. It is not conceivable that employees would knowingly and voluntarily give up that

which was won by them as a result of a long and hard struggle.

Furthermore, we ought not to assume that the General Assembly enacted legislation with such purpose, for it must be presumed that they knew that loss from injuries of this character, unless charged to industry, ultimately fall upon society. Had the General Assembly intended to exclude from the operation of the compensation law "herniæ of effort," it could have accomplished this by inserting in this amendment a provision which was formerly part of the accident insurance policy, "provided always that benefit under this certificate shall not extend to hernia." My associates say: "The only question raised by the appeal from the finding of the commissioner and presented upon this reservation is whether the commissioner erred in holding that, because the plaintiff continued to work for a full week after the accident, his inability to work did not immediately follow the accident and he was not therefore entitled to compensation under the section of the statute above quoted." That is a mistaken reading of the appeal. The third reason of the appeal raises the question of instantaneous incapacity or prostration which has been discussed. While the question, whether the claimant's inability to work immediately followed the accident, is not the sole question raised by the appeal, it is an important question for determination. "Immediately" in this connection, my associates hold, does not mean instantaneously, but "presently or without any substantial interval of time." I agree that it does not mean instantaneously. Subsequently in the opinion this phrase is construed to mean that the injury must be such as compelled the employee to quit work at once, which practically gives to immediately the meaning of instantaneously. If "presently or without any substantial interval of time"

means, as the opinion in another part seems to hold, not in excess of a few hours, I cannot accept this meaning. Immediately is a relative term. It seldom is used in the sense of instantaneously, but is generally used, whether in contract or statute, with the meaning, within a reasonable time under the circumstances. We held in *Lockwood* v. *Middlesex Mutual Assur. Co.,* 47 Conn. 553, 566, that "forthwith" and "immediately" were used in this sense when used in the giving of a notice of proof of loss under a fire insurance policy. And so far as we have had occasion to use this word in expressing time we have never departed from this use. Immediately as used in "immediately following an accident," does not have the meaning my associates attribute to it. There is nothing in the statute, nor in the Compensation Act, which would lead to the construction of "immediate" as "presently or without any substantial interval of time." In none of the States where they have special provisions affecting injuries resulting in herniæ do we find a provision such as this requiring the proof of an instantaneous incapacity immediately following the accident. We do find in several, provision that the descent of the hernia shall immediately follow the strain or cause. Surely immediately as there used does not mean instantaneously, or presently, for this would not be the invariable physiological manifestation. In no State do we find indication that immediately is used in Compensation Acts in the sense of presently, without a substantial interval of time.

To give immediately the meaning my associates do, renders the statute an impracticable one, and inapplicable to the very' cases which ought to fall within it. A construction leading to such ends is never adopted by a court unless the explicit language of the statute compels it. The requirement that a notice with full

particulars of an accident be given within ten days from its occurrence, the court said, in *Trippe* v. *Provident Fund Society,* 140 N. Y. 23, 26, 35 N. E. 316, "must be considered as inserted for some reasonable and practical purpose, and not with a view of defeating a recovery in case of loss by requiring the parties interested to do something manifestly impossible." The attitude of this court toward attempts to construe statutes with drastic rigidity is illustrated in an observation by CHIEF JUSTICE PRENTICE in *Schmidt* v. *O. K. Baking Co.,* 90 Conn. 217, 222, 96 Atl. 963: "It is hard to believe that the General Assembly intended to cut off claimants, whatever the circumstances of their cases might be, quite so inexorably and by so short a limitation of time for the giving of notice."

Let me now take up the principal grounds upon which my associates base their opinion that "immediately" means presently or without any substantial interval of time. The contention that this is the legislative intent in this condition I have sufficiently met in giving my reasons for entertaining a differing conception of the legislative intent. Next, it is held that immediately as here used is an adverb of time, of that there can be no differing view, and that it cannot mean "within a reasonable time," since that can only refer to causation, to something done voluntarily by human agency. I confess my inability to understand this. May not a time for the taking effect of any form of contract, or any form of obligation, or of any duty imposed, be expressed in terms of time, as immediately? Examples where immediately is used in connection with an event, an obligation, or a duty, are often found in contracts and statutes, and such use is a part of our daily communication with each other. The construction accorded this word by my associates has not been made by any of the courts of the country

except in their construction of one clause of an accident policy of insurance, and it is upon the construction of this clause my associates rely, and this I purpose considering later. So well understood is the meaning of immediately in the law as "within a reasonable time" that, when it is desired in contract or statute to express a definite time when a duty should be performed, an obligation accrue, or an event occur, the careful draftsman not infrequently provides for the period, as within a stated time, or from a named day, or from the time of the accident. *Robinson* v. *Masonic Protective Asso.*, 87 Vt. 138, 88 Atl. 531; *Thompson* v. *General Acc., F. & L. Assur. Corp.*, 155 La. 31, 98 So. 746; *Southern Surety Co.* v. *Penzel*, 164 Ark. 365, 261 S. W. 920. In the law "immediately" is almost uniformly regarded as meaning "within a reasonable time" unless the circumstances show that the parties intended it to mean otherwise. Why should the occasional and unusual legal meaning of immediate be adopted in construing this condition, when the result must be the exclusion from compensation of most of the cases of injuries from acquired herniæ, or the herniæ of effort, which were injuries happening to employees in the course of their employment and arising out of the risks of that employment? And why should it be held that our General Assembly intended such a result? Having disposed of immediately as not meaning "within a reasonable time," my associates say that the only other admissible construction would be that adopted in Kansas, "within such time as the processes of nature consume in bringing about disability as a result of the injury," and this would fix the date of disability in terms of causation rather than of time. This is the theory of those of the accident insurance cases in which my associates find the authority for their opinion. If a day certain is fixed for the

consummation of an event, that is fixing a time. If an obligation continues until, or a duty begins when a vessel arrives, that is the fixation of time. If the incapacity results whenever nature brings this about, the time it occurs in is definitely fixed. If immediately in this connection means when disability occurs; this is time; the incapacity to work is when nature brings about the disability following the accident. There is, so far as I can see, no causation involved, only time. My reference to this construction is not intended as an acceptance of this meaning of immediately but an effort to show the fallacy of my associates' argument. The opinion of my associates presents their viewpoint probably as well as the conclusion they reach would admit of.

One other point in the opinion should have a careful examination. In reality the opinion largely rests upon it. The meaning of immediately in this amendment should be construed, my associates hold, in analogy to the construction accorded the clause in policies of accident insurance which limit liability to those injuries which "independently of all other causes immediately, wholly and continuously disable" the insured. In a number of these cases my associates find the construction of immediately to be not instantaneously, nor within a reasonable time, but "presently or without any substantial interval of time" and adopt their construction. There is this marked difference between the situation in the making of the policy and that in the making of this statute; the policy of the insurer was made by it and it had the right to make the terms of its policy and provide, if it chose, that its liability should begin at the moment of disability, while the compensation of the claimant for hernia was fixed in the public statute and recoverable upon his proof that his incapacity for work immediately followed the ac-

cident. The one is a private contract and its restrictions are made for the benefit of the insurer. The other is an amendment to a public statute, remedial in character, presumably enacted neither in the interest of the employer nor the insured, but in justice to each and to serve a State policy of high public concern. It was not the legislative purpose to place so severe restrictions upon the employee as practically to deprive him of compensation when suffering a hernia arising out of and in the course of his employment. We ought not to construe the statute as we would a private contract of this nature, for the intention of the insurer is concerned in his own interest, while that of the legislature is concerned for the public interest, and in justice to all affected by the statute. The provision in the policy was plain and uncontradictory. The provisions of the amendment are contradictory, construed as my associates construe them, since they provide for an impossibility—an incapacity for work, that is, an inability to work, which immediately follows an accident resulting in a hernia, when such disability seldom follows an accident, either instantaneously or presently. In this clause of the insurance policy the use of immediately in connection with "wholly and continuously disable" connotes the meaning of immediately to be instantly, for to wholly disable from accident means an instantaneous disablement.

An analysis of the cases cited by my associates would occupy too much space. Suffice to say, the disability which they determined did not occur immediately, that is, instantly, after the accident, but occurred in from two days to about three and one half months from the date of the accident. In the larger number of them the same result would have followed if immediately had been construed to mean within a reasonable time. A single word in a clause of this character in an acci-

dent policy should in any event be construed in connection with the entire clause of which it is a part. And in the light of the circumstances, and what would be a reasonable time, would necessarily be more limited than, for instance, in the clause providing for notice in case of loss under a fire policy. A study of these cases will show that in determining the meaning of "presently, or without any substantial interval of time elapsing," necessarily the circumstances of each case had to be weighed and practically the same mental processes pursued as are involved in determining whether the period was a reasonable time. The reasoning of these opinions rests upon the assertion found in *Williams* v. *Preferred Mut. Acc. Asso.*, 91 Ga. 698, 700, 17 S. E. 982, that the word with reference to an act done is perhaps in a reasonable time, "but . . . where this word refers to a consequence resulting from a physical cause independent of the will or control of the insured, it cannot, when manifestly used as a word of time, have any such meaning." I have already indicated my opinion of this distinction. It does not seem to me to exist.

I have also pointed out that the meaning of immediately connoted with "wholly and continuously disable" was instantly. So that these authorities do not seem a satisfactory basis to follow in our construction of this word in the clause under construction. Except for the Kansas decisions, my associates say, the courts have pretty uniformly held to the doctrine of the Georgia case from which we have quoted. This is not entirely accurate. We find the New Jersey court applying the Kansas doctrine in *Booth* v. *United States Fidelity & Guaranty Co.* (N. J.) 130 Atl. 131, in a case where the insured fell on May 19th, 1924, and suffered a concussion of the brain, but continued at work until the

following June, when he suffered an apoplexy. In Pennsylvania, immediately in this clause of an accident policy is held to mean a reasonable time. *Ritter* v. *Preferred Masonic Acc. Asso.*, 185 Pa. St. 90, 39 Atl. 1117. The same construction prevailed in *Farner* v. *Massachusetts Mut. Acc. Asso.*, 219 Pa. St. 71, 67 Atl. 928, a case where the injury from the bite of a dog kept increasing for two weeks or more when there resulted disability. In *Brendon* v. *Traders & Travelers Acc. Co.*, 84 App. Div. 530, 82 N. Y. Supp. 860, a physician strained his knee, the third day thereafter he became disabled, and for three weeks was in splints and in bed. Immediately in a substantially similar clause in an accident policy was held to mean within a reasonable time. Similar rulings were made in *Continental Casualty Co.* v. *Matthis*, 150 Ky. 477, 150 S. W. 507, where the assured was disabled for three days after the accident, and then permitted by his physician to go to work, but after three days became disabled, and in *Rorabaugh* v. *Great Eastern Casualty Co.*, 117 Wash. 7, 200 Pac. 587. In view of what has been said concerning the principle upon which the cases cited to this point are rested and the vital difference between an accident policy of insurance and a public statute, these authorities seem too insecure a foundation upon which to rely in so construing this amendment as to deprive the plaintiff employee of compensation.

The chairman of the Compensation Commissioners, Commissioner Williams, in the case of *Armstrong* v. *Baker*, reached the conclusion I have reached. His long and notable service entitles the views expressed in his memorandum to most careful consideration.

The construction which my associates feel compelled to give to this clause of the amendment does a grievous

wrong to this plaintiff, and will deny compensation to the great majority of those who may hereafter suffer a hernia arising in the course of their employment and out of its risks or conditions. Such a result will make this clause of the amendment, while it stands, an inhuman feature of our statutes. The Compensation Act has been a highly remedial Act, benefiting employer and employee alike, and benefiting the public most of all. Its benefits to employees are not alone in the compensations its gives them for injuries suffered in their employment, nor in its making these a charge upon the industry, but perhaps the greatest benefits to them are in the vastly improved conditions under which they work, due to better building facilities, better safety protection, better sanitation, better health protection, and far better inspection and supervision, induced and carried out by employers as a consequence of the Compensation Act, first for their own self-interest, and later as a necessary part of wise business management, and as a part of the larger humanitarian policy of modern industry and business. The resulting industrial benefit has been seen in a lessened wastage of man power, in better workmen and in higher production.

The construction my associates give to this clause of the amendment now becomes the law of the State. Whether the employer, the insurer and my associates are right that the General Assembly intended compensation in cases of hernia where total disability or incapacity to work followed the accident either instantaneously or "presently or without any substantial interval of time elapsing," or I am right in assuming that this clause does not mean that, and that the General Assembly never knowingly reached such an inhuman conclusion, is not the important point for future consideration; the important point is whether

this wrong shall be perpetuated. While this amendment stands the law must remain unchanged; it ought, in my judgment, in common fairness to employees, to be changed by legislation.

In this opinion HAINES, J., concurred.