LOUIS CLINI *vs.* THE NEW HAVEN BREWING COMPANY ET AL.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued February 6th—decided March 5th, 1935.

*George G. DiCenzo,* for the plaintiff.

*M. J. Blumenfeld,* for the defendants.

MALTBIE, C. J.   This case comes before us upon reservation from the Superior Court after the commissioner had made a pro forma award dismissing the claim of the plaintiff.   The parties filed with the commissioner an agreed statement in which the following facts appear: On August 28th, 1933, the plaintiff, while engaged in his employment as a cement mason by the defendant employer, was moving a plank when his foot slipped.   He felt a pain in the groin and fell. He was in great pain and unable to rise, until he was helped by others.   A doctor, immediately called by his boss, examined the plaintiff and stated that he had a rupture; he advised that he should go home, but that he might return the next day, when he could do easy work.   He did go home and came back the next morning, when he was given the job of supervising other employees.   This continued for four or five weeks during which time the plaintiff was more or less an overseer, not doing any of his usual or customary work because of inability to do so, but being paid his regular wages.   The plaintiff visited the doctor several times during this period and was advised that an operation was necessary.   The plaintiff did not want an opera-

tion then but wished to defer it until his wife had given birth to a child which was expected. The doctor suggested that the plaintiff buy a truss. This he did on October 14th, 1933, and thereafter performed the same kind of work he had done before August 28th, 1933, sometimes working overtime. He can do this work when he wears the truss, but without it is unable to do so. On December 1st, 1933, the employer suspended operations and all its employees, including the plaintiff, were discharged. As long as he was in the defendant's employment he continued to receive the same wages paid him before August 28th. By an addition to the finding it appears that the parties also agreed that there was no pre-existing hernia. The commissioner dismissed the claim upon the ground that inability to work, one of the conditions of an award of compensation based upon a hernia, did not follow the injury within one week.

Previous to 1927 the Workmen's Compensation Act contained no special provision as regards hernia. In that year it was amended to provide as follows: "In order to be entitled to compensation for a hernia, the employee shall prove that the hernia resulted from an accidental injury, that inability to work immediately followed such accident, that there was not a pre-existing hernia at or prior to the accident for which compensation is claimed and that, within two weeks thereafter, the facts of such accident were communicated to the employer." Public Acts, 1927, Chap. 307, § 4. In *O'Brien* v. *Wise & Upson Co., Inc.*, 108 Conn. 309, 143 Atl. 155, decided in 1928, we considered this statute with particular reference to the intent of the Legislature in using the word "immediately" and, by a divided court, held that, in order to comply with the law, inability to work must follow an injury presently, without any substantial interval of time, and hence

that where the employee continued his work for a week after the claimed injury, he was not entitled to compensation. The next Legislature amended this provision of the law into its present form: "In order to be entitled to compensation for a hernia, the employee shall prove that the hernia resulted from an accidental injury accompanied by evidences of pain, that inability to work followed such accident within one week, that there was not a pre-existing hernia at or prior to the accident for which compensation is claimed and that, within two weeks thereafter, the facts of such accident were communicated to the employer." Public Acts, 1929, Chap. 242, § 2; General Statutes, § 5237. In the present case the plaintiff fulfilled the requirements of the statute unless, by the phrase "inability to work," the Legislature intended an inability to do any work, not an inability to perform his customary work, where the employee could continue to do a different kind of work at wages as large as those he had previously earned.

In *O'Brien* v. *Wise & Upson Co., Inc.*, supra, p. 316, we stated the reason underlying the making of a special provision as to hernia and it is not necessary to repeat what we there said. The purpose, in brief, was to afford a means of assurance that where incapacity was claimed to be due to hernia, the hernia really resulted from an injury or strain occurring in the course of the employment and not from some strain or effort which occurred outside the scope of the employment. The special requirements made with reference to hernia are in their nature facts tending to evidence the actual connection between the incapacity and the claimed injury. This is apparent from the fact that when in 1929 the statute was changed so that incapacity need not follow immediately, a requirement that the injury be accompanied by evidence of pain

was added. The question resolves itself into this: How stringent requirements did the Legislature intend to establish to accomplish the purpose it had in mind?

While the phrase "inability to work" is not included in that section of the act defining certain terms used in it, the words are in effect defined in the section which establishes the basis of an award of compensation, wherein it is provided that compensation shall not be paid on account of any injury "which does not incapacitate the injured employee for a period of more than seven days from earning full wages at his customary employment." General Statutes, § 5233. It is reasonable to assume that the words "inability to work" in the statute we are considering were used by the Legislature in the same sense as the provision we have just quoted. The inability of an employee to carry on his customary employment, occurring within one week after the injury, would be evidence that the hernia was caused by the accident, of the same character, if not quite as strong, as a complete inability to work. Had the Legislature intended to require a complete inability, it would have been natural and easy for it to use a qualifying adjective. It is not without significance that in no other of the states where the statutes have special provisions as regards hernia do we find that inability to work, in any degree, is made a condition of the recovery of compensation, except in New Jersey where the statute requires proof of "such prostration that the employee was compelled to cease work immediately," a condition which evidently has reference to the immediate effect produced and not to a subsequent inability to work. Supplement to Compiled Statutes of New Jersey, 1911-1924, Vol. 2, § 236-11 (X). Nor do we find in any of the text writers or in any of the discussions of medical men or compensation commissioners which we have read, where hernia

as a basis for compensation has been considered, that inability to work is regarded as a criterion by which to determine whether a compensable injury has been suffered.

There is, however, a more compelling reason for considering that the Legislature did not intend in the provision we are considering a complete inability to work. It certainly did not mean to establish any different basis for awarding compensation for incapacity actually resulting from a hernia than is applicable to incapacity due to other causes. But if the words "inability to work" are construed to mean a complete inability, an employee who is at no time more than partially incapacitated, whatever be the extent of that incapacity, could not recover compensation at all. The effect would be to establish a different and more stringent basis of liability in the case of hernia than is the case as regards incapacity arising from other causes. We therefore construe the words "inability to work" as meaning inability to carry on the employee's customary employment. This accords with what we said, in passing, in the *O'Brien* case (p. 315), that the statute as it then stood meant that "the employee is unable to continue the work upon which he was engaged at the time of the accident." The agreed statement of facts presented to the commissioner a situation where all the specific requirements which the statute makes as conditions of an award of compensation for an injury due to hernia were met.

If, however, it appears from the agreed statement of facts that the plaintiff, despite this, was not entitled to compensation, the Superior Court should sustain the award dismissing the claim. Before the plaintiff would be entitled to an award based on loss of wages, it would necessarily have to appear that by reason of the injury he had been, or was, incapable of earning

as high wages as he had before. *Rossi* v. *Jackson Co.*, 117 Conn. 603, 129 Atl. 617; *Michna* v. *Collins Co.*, 116 Conn. 193, 164 Atl. 502; *Rousu* v. *Collins Co.*, 114 Conn. 24, 31, 157 Atl. 264. Up to the time when the plaintiff left the employment of the defendant employer because the latter went out of business, there had been no loss of earning power. But the agreed facts failed to present a basis for determining whether since then he had become entitled to compensation because he was incapacitated by his injury from earning full wages at his customary employment. See *Reilley* v. *Carroll*, 110 Conn. 282, 285, 148 Atl. 818. Moreover, the plaintiff might show himself entitled to have furnished to him by the defendant the surgical and hospital service necessary for an operation to cure the hernia. The act provides that: "The employer, as soon as he shall have knowledge of any such injury, shall provide a competent physician or surgeon to attend the injured employee, and in addition shall furnish such medical and surgical aid or hospital service as such physician or surgeon shall deem reasonable or necessary. . . . If it shall appear to the commissioner that an injured employee has refused to accept and failed to provide such reasonable medical, surgical or hospital service, all rights of compensation under the provisions of this chapter shall be suspended during such refusal and failure." General Statutes, § 5232. The statute establishes no limit of time within which means shall be taken to cure or alleviate the physical effects of an injury. An employee may so neglect or delay taking remedial measures as to impair or destroy his right to medical, surgical or hospital service. *Hall* v. *LaCourciere Co.*, 93 Conn. 1, 104 Atl. 346; *Rainey* v. *Tunnell Coal Co.*, 93 Conn. 90, 92, 105 Atl. 333. But we cannot say under the facts of this case as they now are presented by the agreed statement

that the plaintiff is not entitled even at this late day to the surgical and hospital services which the doctor, apparently procured for him by the employer, advised to be necessary.

The Superior Court is advised to return the case to the commissioner to determine whether or not, in accordance with this opinion, the plaintiff is entitled to an award of compensation.

In this opinion the other judges concurred.